**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD MARTIN, LORI LESSER, LEIDIANA LLERENA, DAVID GUTFELD, and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　　–v–<br><br>TIAA BANK, FSB, f/k/a Everbank Financial Corp.,<br><br>　　　　　　　Defendant. | CIVIL ACTION<br><br>1:19 Civ. 01707 (AJN)<br><br><br>(<u>JURY TRIAL DEMAND</u>) |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TIAA BANK'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................... iii

I.      PRELIMINARY STATEMENT ............................................................... 1

II.     BACKGROUND STATEMENT OF FACTS ........................................... 2

      A.  Plaintiffs' Work and Pay as RLOs for EverBank and TIAA Bank ................. 2

      B.  Performance Guides Governed Plaintiffs' Compensation ................................. 3

          1.      Performance Guides in Effect from August 1, 2013, through December 1, 2016, Contain Mandatory Arbitration Agreements ................................................ 3

          2.      Performance Guides in Effect as of December 1, 2016, Does Not Contain an Arbitration Agreement ................................... 4

III.    LEGAL ARGUMENT ............................................................................... 5

      A.      Standard for Enforcing Arbitration Agreements ....................................... 5

          1.      The Arbitration Agreements Were Validly Formed ....................... 6

          2.      The Arbitration Agreements Apply to Plaintiffs' Wage Claims ................................................................... 8

          3.      TIAA Bank Did Not Waive Enforcement of the Arbitration Agreements ................................................ 10

              a.  TIAA Bank Has Not Explicitly Waived Arbitration for Plaintiffs Lesser and Gutfeld and/or Similarly Situated RLOs ................... 12

                  i.      The Arbitration Proceeding ..................................... 12

                  ii.     The First Stipulation ................................................. 13

                  iii.    The Second Stipulation Superseded the First Stipulation .............................................. 15

              b.  There has Been No Implicit Waiver of Arbitration for Plaintiffs Lesser and Gutfeld and/or Similarly Situated RLOs ................................................ 16

             i.        **There Has Been No Delay in Filing this Motion and No Other Motions/ Discovery in this Case**................................................................**16**

             ii.       **There Has Been No Other Actions Inconsistent with Arbitration**....................................**17**

             iii.      **There Has Been No Prejudice to Plaintiffs**...............**18**

    **B.**       **The Court Should Stay this Case Pending Arbitration**.............................**19**

**IV.**    **CONCLUSION** ...............................................................................**20**

# TABLE OF AUTHORITIES

## Cases

*Am. Shipping Line, Inc. v. Massam Shipping Indus., Inc.*,
885 F.Supp. 499 (S.D.N.Y. 1995) ................................................................. 19

*American Express Co. v. Italian Colors Restaurant*,
570 U.S. 228 (2013) ................................................................................... 5

*Bates v. Long Island Railroad Co.*,
997 F.2d 1028 (2d Cir. 1993) ...................................................................... 8

*Bensadoun v. Jobe-Riat*,
316 F.3d 171 (2d Cir. 2003) ....................................................................... 6

*Bischoff v. DirecTV, Inc.*,
180 F.Supp.2d 1097 (C.D. Cal. 2002) ....................................................... 17

*Bousa Inc. v. Oy*,
No. 92-CIV-6194 (RPP), 1993 WL 78019 (S.D.N.Y. March 16, 1993) ........... 18

*Carter v. Countrywide Credit Industries, Inc.*,
362 F.3d 294 (5th Cir. 2004) ...................................................................... 9

*Chun Ping Turng v. Guaranteed Rate, Inc.*,
371 F.Supp.3d 610 (N.D. Cal. Jan. 17, 2019) ............................................. 17

*Ciago v. Ameriquest Mortgage Co.*,
295 F.Supp.2d 324 (S.D.N.Y. 2003) ...................................................... 8, 10

*Com-Tech Assoc. v. Computer Assoc. Int'l Inc.*,
938 F.2d 1574 (2d Cir. 1991) ..................................................................... 18

*Cotton v. Slone*,
4 F.3d 176 (2d Cir. 1993) ........................................................................... 19

*DaimlerChrysler Ins. Co. v. Pambianchi*,
762 F.Supp.2d 410 (D.Conn. 2011) ............................................................. 6

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ................................................................................... 19

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*,
191 F.3d 198 (2d Cir. 1999) ....................................................................... 7

*DuBois v. Macy's E., Inc.*,
338 F.App'x. 32 (2d Cir. 2009) .................................................................... 6

*D'Antuono v. Serv. Road Corp.*,
789 F.Supp.2d 308 (D.Conn. 2011) ............................................................. 6

*Garcia v. Wachovia Corp.*,
699 F.3d 1273 (11th Cir. 2012) .................................................................. 11

*Gillman v. Chase Manhattan Bank, N.A.*,
534 N.E.2d 824 (N.Y. 1998) ........................................................................ 7

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) .................................................................................... 10

*Green Tree Fin. Corp.- Ala. v. Randolph*,
531 U.S. 79 (2000) ..................................................................................... 5

*Greene v. Subcontracting Concepts, L.L.C.*,
No 13-CIV-01500 (AJN), 2014 WL 1087999 (S.D.N.Y. March 19, 2014) .......... 8

*Grenawalt v. AT&T Mobility, LLC*,
   937 F.Supp.2d 438 (S.D.N.Y. 2013) ................................................................. 8
*Hamlett v. Owners Advantage, LLC*,
   No. 13-80416-CIV, 2013 WL 4711165 (S.D. FL. Aug. 30, 2013) .......................... 9
*Hines v. Overstock.com, Inc.*,
   380 F. App'x. 22 (2d Cir. 2010) ....................................................................... 6
*Hodges v. All Transit LLC*,
   No. CV 13-2587 (LDW) (ARL), 2014 WL 537748 (E.D.N.Y. Feb. 7, 2014) ............ 9
*In re A2P SMS Antitrust*,
   972 F.Supp.2d. 465 (S.D.N.Y. 2013) ................................. 5, 6, 18, 19, 20
*In re Checking Account Overdraft Litig.*,
   754 F.3d 1290 (11th Cir. 2014) ...................................................................... 11
*In re Currency Conversion Fee Antitrust Litig.*,
   361 F.Supp.2d 237 (S.D.N.Y. 2005) ................................................................ 19
*Katsoris v. WME IMG, LLC*,
   237 F.Supp.3d 92 (S.D.N.Y. 2017) .................................................................. 18
*Krinsk v. SunTrust Banks, Inc.*,
   654 F.3d 1194 (11th Cir. 2011) ...................................................................... 11
*Lamps Plus, Inc. v. Varela*,
   --- U.S. ---, 139 S. Ct. 1407 (April 24, 2019) ................................................... 9
*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
   67 F.3d 20 (2d Cir. 1995) .............................................................................. 11
*Lemus v. CMH Homes, Inc.*,
   798 F.Supp.2d 853 (S.D. Tex. 2011) ............................................................... 17
*LG Electronics, Inc. v. Wi-Lan USA, Inc.*,
   No. 13-CV-2237 (RA), 2015 WL 4578537 (S.D.N.Y. July 29, 2015) .................... 18
*Livingston v. Assocs. Fin., Inc.*,
   339 F.3d 553 (7th Cir. 2003) .......................................................................... 17
*Mehler v. Terminex Int'l Co.*,
   205 F.3d 44 (2d Cir. 2000) .............................................................................. 8
*Mikes v. Strauss*,
   889 F. Supp. 746 (S.D.N.Y. 1995) .................................................................. 10
*Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*,
   88 F.3d 129 (2d Cir. 1996) .............................................................................. 5
*Nayal v. HIP Network Servs. IPA, Inc.*,
   620 F.Supp.2d 566 (S.D.N.Y 2009) .................................................................. 7
*Oppenheimer & Co., Inc. v. Neidhardt*,
   56 F.3d 352 (2d Cir. 1995) .............................................................................. 6
*Ouedraogo v. A-1 International Courier Service, Inc.*,
   No. 12-CIV-5651 (AJN), 2014 WL 1172581 (S.D.N.Y. March 21, 2104) ............ 5, 8
*Paladeno v. Avnet Computer Technologies, Inc.*,
   134 F.3d 1054 (11th Cir. 1998) ....................................................................... 9
*PPG Indus., Inc. v. Webster Auto Parts Inc.*,
   128 F.3d 103 (2d Cir. 1997) .............................................................. 11, 17, 18
*Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
   991 F.2d 42 (2d Cir. 1993) .............................................................................. 7

iv

*Ragone v. Atlantic Video at Manhattan Center*,
   595 F.3d 115 (2d Cir. 2010) ............................................................................ 6
*Republic Ins. Co. v. PAICO Receivables, LLC*,
   383 F.3d 341 (5th Cir. 2004) .......................................................................... 11
*S & R Co. of Kingston v. Latona Trucking, Inc.*,
   159 F.3d 80 (2d Cir. 1998) ............................................................................ 12
*Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P.*,
   49 F.Supp.2d 331 (S.D.N.Y. 1999) ........................................ 11, 12, 17, 19
*Schnabel v. Trilegiant Corp.*,
   697 F.3d 110 (2d Cir. 2012) ............................................................................ 6
*Stevenson v. Tyco International (US) Inc. Supplemental Retirement Plan*,
   No. 04-CV-4037 (KMK), 2006 WL 2827635 (S.D.N.Y. Sept. 29, 2006) ............................. 11
*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ........................................................................................ 9
*Sutherland v. Ernst & Young LLP*,
   726 F.3d 290 (2d Cir. 2013) .......................................................................... 10
*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
   310 F.3d 102 (2d Cir.2002) ........................................................................... 18
*WorldCrisa Corp. v. Armstrong*,
   129 F.3d 71 (2d Cir. 1997) ............................................................................ 20

**Statutes**

9 U.S.C. §1 ................................................................................................................ 1
9 U.S.C. § 4 ............................................................................................................. 6
29 USC § 201 ......................................................................................................... 12

**Other Authorities**

8 Samuel Williston, *A Treatise on the Law of Contracts*, § 18:9 at 54 (Richard A. Lord ed., 4th
   ed. 1998) ......................................................................................................... 7

# I.  PRELIMINARY STATEMENT

Plaintiffs Richard Martin, Lori Lesser, Leidiana Llerena and David Gutfeld assert claims for unpaid wages and overtime pay on behalf of themselves and similarly situated former Retail Loan Officers (RLOs) of TIAA, FSB d/b/a TIAA Bank ("TIAA Bank") (formerly EverBank) under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL") and New Jersey Wage Laws ("NJWL"). However, all wage claims arising before December 1, 2016, are subject to mandatory arbitration agreements as contained in various Performance Guides in effect before December 1, 2016.

Specifically, Plaintiffs Lesser, Gutfield, and Llerena[1] expressly agreed to arbitrate "[a]ny dispute relating to or arising under or in connection with this Guide . . .," which necessarily includes the payment of their compensation. (Performance Guides with effective dates of August 1, 2013 and April 1, 2014; annexed as Exhibits A and B to the Declaration of Leslie W. Ehret.)

TIAA Bank now moves, pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* for an Order compelling Lesser and Gutfield[2] to arbitrate their wage claims arising before December 1,

---

[1] Plaintiff Martin began his employment with TIAA Bank on July 14, 2017. (See Answer, Rec. Doc. 38, ¶ 11.) All of Martin's wage claims are for a time period after December 1, 2016, the effective date of the Performance Guide containing no arbitration provision. Therefore, none of Martin's claims are arbitrable.

[2] Plaintiff Llerena invoked the arbitration agreement contained in the 2014 Performance Guide by filing an arbitration demand. (See Demand for Arbitration, annexed as Exhibit G to the Declaration of Leslie W. Ehret.) In January 2019, the parties to the arbitration reached a stipulation that resulted in TIAA Bank waiving the arbitration provision as to Llerena, which allowed her to bring all of her claims, even those claims that were arbitrable, in this lawsuit. (January 23, 2019 Stipulation, referred to as "First Stipulation," annexed as Exhibit H to the Declaration of Leslie W. Ehret.) As will be explained in this memorandum, TIAA Bank contends the First Stipulation was superseded by a subsequent stipulation executed on April 10, 2019. (April 10, 2019 Stipulation, referred to as "Second Stipulation," annexed as Exhibit I to the Declaration of Leslie W. Ehret). The arbitration parties did not agree as to the effect of the Second Stipulation, and, specifically, whether Llerena was added back as a Claimant to the arbitration as a result of the Second Stipulation. (See May 17, 2019, Case Management Order and May 21, 2019, correspondence annexed as Exhibit J to the Declaration of Leslie W. Ehret.) During the arbitration case management conference, Llerena's counsel represented their belief that the First Stipulation was still operative and controlling, Llerena did not consent to arbitration, and, instead, they were operating under the First Stipulation that TIAA Bank waived arbitration for Llerena and all of her claims could proceed in this litigation.  For the purposes of this motion and in consideration of the First Stipulation, TIAA Bank will waive the mandatory arbitration as to Llerena and will not challenge Llerena's ability to bring all of her claims in this lawsuit.  However, TIAA Bank asserts its waiver is limited only as to Llerena and no other RLOs, including Plaintiffs Lesser and Gutfield, and does not prevent TIAA Bank from enforcing its right to

2016. Likewise, assuming Plaintiffs file a motion for conditional certification and/or class certification and, in the event the Court conditionally certifies this case as a FLSA collective action and/or grants a motion to certify one or more classes, TIAA Bank also seeks to have any putative class or collective action members be ordered to arbitrate their claims arising before December 1, 2016. TIAA Bank also seeks to stay this proceeding pending the arbitration of the claims arising before December 1, 2016.

## II.   BACKGROUND STATEMENT OF FACTS

### A.  Plaintiffs' Work and Pay as RLOs for EverBank and TIAA Bank

Plaintiffs worked for TIAA Bank and its predecessor, EverBank, as Retail Loan Officers (RLOs) in Florida, New York and New Jersey from as early as October 7, 2013, through as late as March 15, 2019. (Complaint, Rec. Doc. 1, ¶¶ 10-13, 45.) Plaintiffs' primary duty was to sell residential mortgage loans. (Complaint, ¶ 50.) Plaintiffs were classified as "outside sales employees," exempt from the overtime requirements under the FLSA, NYLL and NJWL. (Answer, Rec. Doc. 38, ¶¶ 46, 48, 65, 79, 93, Seventh Affirmative Defense.)  Plaintiffs were paid by draws and commissions and received no premium pay for any overtime hours worked because they were exempt. (Complaint, ¶ 46.) Instead, Plaintiffs understood the draws and commissions were intended to fully compensate them for all hours they worked, even if they worked more than 40 hours in a workweek.

Plaintiffs now claim TIAA Bank misclassified them as exempt, outside sales employees, depriving them of overtime pay. (Complaint, ¶ 56.) Plaintiffs purport to assert their claims for unpaid overtime wages (and in the case of Plaintiffs Martin and Lesser, additional pay for "spread of hours" under NYLL) on behalf of themselves and putative class/collective members.

---

compel all other former TIAA Bank employees who agreed to arbitrate their claims arising before December 1, 2016. Therefore, Llerena is the one and only exception to the motion to compel arbitration.

(Complaint, ¶ 2.)  To that end, Plaintiffs have filed this case as a collective action and purportedly they seek to represent all RLOs who worked for TIAA Bank nationwide. (Complaint, ¶ 19.) Additionally, Plaintiffs Martin and Lesser also purport to represent a class of RLOs who worked in New York and Plaintiff Gutfeld purports to represent a class of RLOs who worked in New Jersey. (Complaint, ¶¶ 27, 36.)

## B.   Performance Guides Governed Plaintiffs' Compensation

Compensation for Plaintiffs, and all similarly situated RLOs, were contained in and governed by a document referred to as a "Performance Guide" or "Guide." The purpose and scope of the Performance Guides was to enumerate Plaintiffs' compensation:

> The Guide describes, among other things: (a) your cash commission opportunities; (b) the method for calculation of cash commission compensation; (c) the timing for payment of cash commission compensation; (d) applicable performance standards; and (e) other procedures and requirements for which the [RLO] is responsible.

(Exhibits A, B, C and D annexed to the Declaration of Leslie W. Ehret, p. 3.)

## 1.   Performance Guides in Effect from August 1, 2013, through December 1, 2016, Contain Mandatory Arbitration Agreements

The Performance Guides were revised periodically.[3]  The August 1, 2013, Performance Guide (Exhibit A) was revised and superseded by a new Performance Guide with an effective date of April 1, 2014 (Exhibit B).  These Performance Guides, in effect from August 1, 2013, through December 1, 2016, contain the same mandatory arbitration agreement, providing:

> J.   Disputes.
>
> Any disputes relating to or arising under or in connection with this Guide shall be submitted to mandatory arbitration in Duval County, Florida, in accordance  with  the  Commercial  Rules  of  the  American  Arbitration

---

[3]     There are three versions of the 2013 Performance Guide depending upon the market in which the RLO worked, i.e., Market One, Market Two or Market Three.  However, all three versions of the 2013 Performance Guide contain the same arbitration agreement.  The agreement applicable to Gutfeld and Lesser is Exhibit A.

Association then in effect, and judgment upon the award rendered pursuant
to such arbitration may be entered in any court of competent jurisdiction.

(Exhibit A, p. 13-14 and Exhibit B, p. 27.)

Plaintiffs Lesser and Gutfeld received and acknowledged the Performance Guides containing this mandatory arbitration agreement, agreeing to their terms.  Lesser executed the 2013 Performance Guide and received, acknowledged and agreed to be bound by the 2014 Performance Guide. (August 1, 2013, Performance Guide Executed by Lesser and Lesser EverBank University record showing her receipt, acknowledgment and agreement to be bound by the April 1, 2014, Performance Guide, annexed as Exhibit E to the Declaration of Leslie W. Ehret.)  Plaintiff Gutfeld executed the April 1, 2014, Performance Guide. (April 1, 2014, Performance Guide Executed by Gutfeld, annexed as Exhibit F to the Declaration of Leslie W. Ehret.)   Thus, both Lesser and Gutfeld agreed to mandatory arbitration of their wage claims for at least a portion of their employment with TIAA Bank.

## 2.   Performance Guides in Effect as of December 1, 2016, Do Not Contain an Arbitration Agreement

TIAA Bank revised its Performance Guide with an effective date of December 1, 2016. (The "2016 Performance Guide," annexed as Exhibit C to the Declaration of Leslie W. Ehret.) TIAA Bank further revised the Performance Guide on July 1, 2018. (The "2018 Performance Guide," annexed as Exhibit D to the Declaration of Leslie W. Ehret.) However, the 2016 and 2018 Performance Guides materially differ from the earlier Performance Guides in that they do not contain arbitration agreements. Instead, TIAA Bank removed the arbitration agreement from the 2016 and 2018 Performance Guides. (Exhibit C, Exhibit D.) Therefore, any claims arising on or after December 1, 2016, would not be subject to mandatory arbitration.

Both Lesser and Gutfeld were employed by TIAA Bank after the 2016 and 2018 Performance Guides went into effect; both employees remained employed with TIAA Bank through March 15, 2019, when their positions were eliminated. (See Answer, ¶¶ 12, 13.) Therefore, since there was no agreement to arbitrate the claims arising on or after December 1, 2016, those claims are properly before this Court.[4]

### III.   LEGAL ARGUMENT

**A.      Standard for Enforcing Arbitration Agreements**

Under the Federal Arbitration Act ("FAA"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," and must be "rigorously enforce[d] . . . according to their terms." *Ouedraogo v. A-1 International Courier Service, Inc.*, No. 12-CIV-5651 (AJN), 2014 WL 1172581, at *1 (S.D.N.Y. March 21, 2104) (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 232–33 (2013)).  In general, the FAA "reflects the overarching principle that arbitration is a matter of contract." *Id.*  Whether a dispute is arbitrable comprises two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in questions; and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."  *In re A2P SMS Antitrust Litg.*, 972 F.Supp.2d. 465, 474 (S.D.N.Y. 2013) (citing *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996)).  "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *In re A2P SMS Antitrust Litg.*, 972 F.Supp.2d at 473 (citing *Green Tree Fin. Corp.- Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). In resolving a defendant's motion to compel arbitration, the Court accepts

---

[4] Plaintiff Llerena and Martin were employed with TIAA Bank after December 1, 2016; therefore, their claims arising on or after December 1, 2016, are also properly before this Court.

as true "factual allegations in the plaintiffs' complaint that relate to the underlying dispute between the parties." *Id*. (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012)).

### 1. The Arbitration Agreements Were Validly Formed

"The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate." *Id.* (citing *Schnabel*, 697 F.3d at 118.)  When determining whether an arbitration agreement was validly formed, the Court applies "a standard similar to that applicable for a motion for summary judgment." *Hines v. Overstock.com, Inc.*, 380 F. App'x. 22, 24 (2d Cir. 2010) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).  Thus, "[a]llegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a genuine issue of material fact." *Schnabel*, 697 F.3d at 113 (citing *Bensadoun*, 316 F.3d at 175).  The party opposing arbitration may not create such a dispute by merely denying the allegations, but must instead point to "evidentiary facts showing that there is a dispute of fact to be tried." *DuBois v. Macy's E., Inc.*, 338 F.App'x. 32, 33 (2d Cir. 2009) (quoting *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)).  "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4). As in summary judgment context, however, the Court may make its own legal findings. *See D'Antuono v. Serv. Road Corp.*, 789 F.Supp.2d 308, 320 (D.Conn. 2011) (citing *DaimlerChrysler Ins. Co. v. Pambianchi*, 762 F.Supp.2d 410, 418-19 (D.Conn. 2011)); *see e.g., Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 122-25 (2d Cir. 2010) (affirming finding arbitration agreement was not unconscionable as a matter of law).

Both Plaintiffs Lesser and Gutfeld received and executed valid and binding agreements to arbitrate in this case. (Exhibits E, F.) Plaintiffs have not alleged any facts concerning the arbitration

agreement in their Complaint; although they clearly knew of the existence of the arbitration agreement (as demonstrated by the fact that Plaintiff Llerena invoked the arbitration agreement, Exhibit G), they omitted any mention of it in the Complaint. Despite Plaintiffs' glaring omission of this pertinent fact in the Complaint, there is no basis for Plaintiffs to argue the arbitration agreements were either invalid or unconscionable. For instance, there was no alleged fraud or wrongful conduct by TIAA Bank to induce Plaintiffs to sign the arbitration agreements. *See e.g., Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) ("Under New York law, in the absence of fraud or other wrongful conduct, a party who signs a contract is presumed to know its contents and assent to them, and he is therefore bound by its terms and conditions.") Instead, Plaintiffs willingly and knowingly received and executed the Performance Guides; they received the financial benefits provided for under the Performance Guide, and thus they also are bound by the arbitration agreement contained in the Performance Guides.

There is no conceivable argument that the subject arbitration agreements were both "procedurally and substantively unconscionable." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F.Supp.2d 566, 571 (S.D.N.Y 2009) (citing *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1998)). For instance, the terms of the arbitration agreements cannot be said to be "unreasonably favorable to" the employer. *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999) (quoting 8 Samuel Williston, *A Treatise on the Law of Contracts*, § 18:9 at 54 (Richard A. Lord ed., 4th ed. 1998)).

Finally, Plaintiffs' counsel cannot legitimately dispute the validity of the arbitration agreements because they have already invoked the arbitration agreements in a separate pending arbitration. (Exhibit G). Therefore, their previous invocation of the arbitration agreements acts as

an admission that the arbitration agreement is both valid and enforceable as to Plaintiffs Lesser

and Gutfeld, as well as the putative collective and class action plaintiffs. *See Bates v. Long Island

Railroad Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993) (judicial estoppel doctrine "prevents a party

from asserting a factual position in a legal proceeding that is contrary to a position previously taken

by him in a prior legal proceeding.")

### 2. The Arbitration Agreements Apply to Plaintiffs' Wage Claims

In order to compel arbitration, the Court must be satisfied that the scope of the arbitration

agreement covers the claims asserted in this lawsuit. There is no dispute as to this issue—by its

own terms, the Performance Guides govern the payment of Plaintiffs' compensation, and, thus,

the arbitration provisions contained within the Performance Guides apply to Plaintiffs' wage

claims. The arbitration agreement broadly applies to "[a]ny disputes relating to or arising under or

in connection with" the Performance Guide governing Plaintiffs' pay. (Exhibits A and B). "With

such a broad arbitration agreement, there is a presumption of arbitrability overcome only if 'it may

be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute,' with any doubts . . . resolved in favor of coverage." *Greene v.

Subcontracting Concepts, L.L.C.*, No 13-CIV-01500 (AJN), 2014 WL 1087999, at * 2 (S.D.N.Y.

March 19, 2014) (citing *Grenawalt v. AT&T Mobility, LLC*, 937 F.Supp.2d 438, 456 (S.D.N.Y.

2013)); *Mehler v. Terminex Int'l Co.*, 205 F.3d 44, 47 (2d Cir. 2000) (referring to arbitration clause

providing for coverage of "any controversy or claim between [the parties] arising out of or relating

to the Agreement" as "classically broad");  *see also, Ciago v. Ameriquest Mortgage Co.*, 295

F.Supp.2d 324, 332 (S.D.N.Y. 2003) (arbitration provision broad enough to encompass Plaintiff's

federal and state law claims for failure to pay overtime wages); *Ouedraogo*, 2014 WL 1172581,

at * 2 (holding Plaintiffs' employment claims are claims for unpaid wages covered by an

arbitration provision containing a similar broad language covering "any dispute, claim, question or disagreement arising from or relating to this agreement" when the agreement "explicitly discusses the rate at which Plaintiff was to be paid for his work"); *Hodges v. All Transit LLC*, No. CV 13-2587 (LDW) (ARL), 2014 WL 537748, at * 2 (E.D.N.Y. Feb. 7, 2014) (holding arbitration provision "clearly and unmistakenly" requires arbitration of Plaintiffs' FLSA claims, "notwithstanding the lack of specific reference in the Arbitration Provision to federal statutory claims or the FLSA); *Hamlett v. Owners Advantage, LLC*, No. 13-80416-CIV, 2013 WL 4711165, at *3 (S.D. FL. Aug. 30, 2013) ("Here, the language of the Arbitration Provision clearly encompasses Plaintiff's claims. . . . [T]he Arbitration Provision states . . . it covers '[a]ny dispute or claiming arising out of this Agreement.' . . . Although the Arbitration Provision does not specifically state that FLSA claims are arbitrable, Plaintiff's claims fall squarely within the scope of the Arbitration Provision. There is no question that dispute over whether Plaintiff is entitled to overtime compensation under the FLSA creates a claim that would arise of the Agreement.") (citing, *Paladeno v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1059 (11th Cir. 1998)) ("An arbitration agreement [need not] specifically list every federal or state statute it purports to cover.")  Again, Plaintiff Llerena has invoked this very arbitration provision to seek overtime compensation (arising before December 1, 2016), and, thus, Plaintiffs must concede the arbitration provision covers their overtime and "spread of hours" claims.

Courts have similarly extended the reach of broad arbitration provisions—such as those at issue here—and compelled arbitration of FLSA claims brought by an individual on behalf of a putative class of similarly situated employees.[5] *See Carter v. Countrywide Credit Industries, Inc.*,

---

[5] TIAA Bank's position is the arbitration agreements at issue do not contemplate or permit Plaintiffs to arbitrate their claims as a class, and, instead they must proceed on an individual basis. The arbitration agreements at issue are silent on class arbitration and TIAA Bank has never agreed to class arbitration. *See Lamps Plus, Inc. v. Varela*, --- U.S. ---, 139 S. Ct. 1407, 1412 (2019) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)).  Thus,

362 F.3d 294, 298 (5th Cir. 2004) (rejecting Plaintiffs' argument that arbitration agreement inhibited their ability to proceed with FLSA overtime claims on a class basis and affirming District Court order compelling arbitration stating, "[W]e reject the [Plaintiffs'] claim that their inability to proceed collectively deprives them of substantive rights available under the FLSA") (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)) (holding class claims under the Age Discrimination in Employment Act, utilizing the FLSA's collective action procedure, are subject to arbitration); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296-97 (2d Cir. 2013). Likewise, Plaintiffs' state law claims are also within the scope of the arbitration agreements. *Ciago*, 295 F.Supp.2d at 326 (holding Plaintiff's individual and class-based overtime claims under the NYLL were subject to arbitration noting, "nothing in [the NYLL] indicate[s] that the state legislature intended to preclude compulsory arbitration of claims under those provisions); *Mikes v. Strauss*, 889 F. Supp. 746, 757 (S.D.N.Y. 1995) (compelling arbitration of claims for failure to pay wages under the NYLL).

### 3. TIAA Bank Did Not Waive Enforcement of the Arbitration Agreements

TIAA Bank anticipates Plaintiffs' counsel will argue TIAA Bank waived its right to enforce the arbitration agreements as to Plaintiffs Lesser and Gutfeld, and as to similarly situated RLOs.[6] This is not the case and Plaintiffs cannot meet the "heavy burden" of proving both waiver and prejudice such that they should not be mandated to arbitrate their claims.

---

much like *Lamps Plus*, TIAA Bank is seeking an order "compelling individual arbitration." *Lamps Plus*, 139 S. Ct. at 1414.

[6] As TIAA Bank understands Plaintiffs' position, they will not challenge and, instead concede the arbitration provisions apply to two sets of TIAA Bank employees: (1) RLOs who ended their employment prior to December 1, 2016; and (2) RLOs who had two separate stints of employment with TIAA Bank, where the first stint of employment ended before December 1, 2016, and they were subsequently rehired for a second stint of employment after December 1, 2016.  It is believed Plaintiffs only challenge to the arbitration proceedings are as to those TIAA Bank employees who are "continuously employed" with no break in service both before and after December 1, 2016, the effective date of the 2016 Performance Guide.

"Despite the strong policy in favor of arbitration, a party may, by its conduct, waive its right to arbitration." *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012); *see also In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) ("Arbitration should not be compelled when the party who seeks to compel arbitration has waived that right."). The party seeking to set aside a mandatory arbitration agreement by arguing waiver carries a "heavy burden." *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 n.17 (11th Cir. 2011) ("Because federal policy strongly favors arbitration, the party who argues waiver bears a heavy burden of proof. . . .")  There is a strong presumption against finding a waiver of arbitration. *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004). Any doubt as to whether there has been a waiver should be resolved in favor of arbitration. *Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P.*, 49 F.Supp.2d 331, 338 (S.D.N.Y. 1999) (citing *PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir. 1997)). In deciding whether there has been a waiver, a court should have a "healthy regard for the policy of promoting arbitration." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995).

Waivers can be either explicit or implicit. "Express waivers have been found in cases where a [party] withdrew a previous motion to compel arbitration, only to file a new motion later in the same action . . . [or] where a party seeking arbitration previously opposed a motion to compel arbitration." *Stevenson v. Tyco International (US) Inc. Supplemental Retirement Plan*, No. 04-CV-4037 (KMK), 2006 WL 2827635, at * 11 (S.D.N.Y. Sept. 29, 2006). As for implicit waivers, this Court has enunciated three factors to determine whether a party has implicitly waived its right to arbitration:

> While waiver of arbitration is not to be lightly inferred, the issue is fact-specific and there are no bright-line rules. Factors to consider include (1) the time elapsed from the commencement of the litigation to the request for arbitration; (2) the amount of litigation

11

(including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense.

*Satcom Intern.*, 49 F.Supp.2d at 340, citing *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 84 (2d Cir. 1998).

### a. TIAA Bank Has Not Explicitly Waived Arbitration for Plaintiffs Lesser and Gutfeld and/or Similarly Situated RLOs

It is anticipated Plaintiffs may argue TIAA Bank explicitly waived arbitration as to Plaintiffs Lesser and Gutfeld, and similarly situated RLOs, based upon two stipulations reached between Plaintiffs' counsel and TIAA Bank's counsel is a separate arbitration proceeding. This arbitration proceeding did not involve either Lesser or Gutfeld; they were not a party to the arbitration.

### i.    The Arbitration Proceeding

By way of background, on September 6, 2018, Plaintiffs' counsel filed an arbitration demand on behalf of three former RLOs, Robert S. True, Guillermo A. Cacho and Leidiana T. Llerena, both in their individual capacities, and as representatives of a purported nationwide collective action on behalf of all similarly situated RLOs.  Similar to this case, claimants to the arbitration seek recovery under the Fair Labor Standards Act, 29 USC § 201, for unpaid overtime; the claimants allege they were employed as RLOs, were misclassified as exempt under the FLSA, worked over 40 hours per week, and were not paid overtime. (Exhibit G.) During the arbitration initial case management conference, TIAA Bank raised two threshold issues of arbitrability: (1) the scope of the arbitration, specifically, whether the three claimants had a valid agreement to arbitrate claims after December 1, 2016, since the 2016 and 2018 Performance Guides did not

contain arbitration agreements; and (2) whether the arbitration could proceed as a collective action. (Case Management Order, Exhibit J annexed to the Declaration of Leslie W. Ehret.)

### ii.     The First Stipulation

In response to the first threshold issue, the issue of arbitrability of claims arising after December 1, 2016, the effective date of the 2016 Performance Guide, the parties reached a stipulation on January 23, 2019, referred to as the "First Stipulation." (First Stipulation, Exhibit H annexed to the Declaration of Leslie W. Ehret; Case Management Order, Exhibit J annexed to the Declaration of Leslie W. Ehret.) The First Stipulation was submitted to the arbitrator before this case was filed; at the time of First Stipulation, TIAA Bank had no knowledge that Plaintiff's counsel were planning on filing a lawsuit in this Court. Only Plaintiff's counsel knew that information. Indeed, this lawsuit was filed on February 22, 2019, a month after the First Stipulation. (Rec. Doc. 1.)

In the First Stipulation, the parties agreed all claims arising after December 1, 2016, would not be subject to arbitration because the 2016 Performance Guide (and 2018 Performance Guide) did not contain arbitration agreements. (Exhibit H.) The stipulation also purported to address who would and would not be permitted to be claimants[7] and/or opt-in claimants to the arbitration, assuming the arbitration could proceed as a collective action. (Exhibit H.)  For this purposes of this motion, at issue are paragraphs 4, 6 and 7 of the First Stipulation stating:

> 4.  The Parties stipulate because the 2016 Performance Guide does not contain an agreement to arbitrate claims, any employees who were still continuously employed by EverBank/ TIAA on December 1, 2016, without any break in the employment relationship, regardless of the start date of their employment, were/ are subject to the 2016 Performance Guide, and as such, said employees' claims are not subject to arbitration.

---

[7] In paragraph 8 of the First Stipulation, the parties stipulated Leidiana Llerena's claims arising on or after December 1, 2016, were not arbitrable and subject to the arbitration, and, therefore, she chose to dismiss her claims in the arbitration.

* * *

6.   Claimants (or potential claimants) whose employment ended prior to December 1, 2016, are subject to the arbitration provisions contained in the 2014 Performance Guide, and those employees who meet the criteria set forth in paragraph 4 above are not subject to the said arbitration provision.

7.   Even provided this Arbitration proceeds as a collective action, Claimants will not seek, and the Arbitrator will not allow, any person to join, "opt-in" or otherwise be a part of this Arbitration if s/he meets the criteria set forth in paragraph 4 above.

(Exhibit H, p. 2, ¶¶ 4, 6, 7.)

Plaintiffs interpret these paragraphs to mean any RLO who was "continuously employed" by TIAA Bank both before and after the effective date of the 2016 Performance Guide, with no break in service, would be exempted from arbitrating their claims arising under the 2013 and 2014 Performance Guides; Plaintiff's counsel will argue the stipulation allows all RLOs who were "continuously employed" to pursue all claims against TIAA Bank in this Court and they cannot be compelled to arbitrate their claims arising under the 2013 and 2014 Performance Guides. Despite the fact that neither Lesser nor Gutfeld were claimants or "opt-ins" to the arbitration, they may try to rely on the First Stipulation because they both were "continuously employed" with no break in service by TIAA Bank before and after the 2016 Performance Guide. Plaintiffs claim TIAA Bank waived arbitration as to them and they should not have to arbitrate their claims under the 2013 and 2014 Performance Guides. Likewise, Plaintiffs will argue these stipulations in the First Stipulation should be applied to all similarly situated RLOs, regardless of the fact they were not parties to the arbitration.

TIAA Bank does not agree with Plaintiff's broad interpretation of the meaning or intent of paragraphs 4, 6 and 7 of the First Stipulation. Instead, TIAA Bank's interpretation of these

14

paragraphs simply is that any claims arising after December 1, 2016, were not subject to the arbitration. TIAA Bank never contemplated or intended to waive arbitration as to all RLOs who were employed by TIAA Bank under the 2013 and 2014 Performance Guides.

### iii.    The Second Stipulation Superseded the First Stipulation

However, despite the confusion and ambiguity that paragraphs 4, 6 and 7 of the First Stipulation may have caused between the parties, and, even assuming Plaintiff's interpretation had merit, the First Stipulation does not control because it was subsequently superseded and obviated by a Second Stipulation submitted by the parties on April 10, 2019.  (Second Stipulation, Exhibit I annexed to the Declaration of Leslie W. Ehret.)

The Second Stipulation addressed the second threshold question, that is, whether the claimants could proceed as a collective action. (Exhibit I.)  In the Second Stipulation, Plaintiff's attorney conceded they would not proceed as a collective action in the arbitration. (Exhibit I.) Instead, the parties agreed that the named claimants and the six RLOs who had already submitted consent, opt-in forms to join the arbitration would be the only individual claimants in the arbitration.[8] (Exhibit I.)

Thus, the Second Stipulation resolved and finalized who would (and would not) be a party to the arbitration, obviating any of the purported parameters of who could and would be a party contained in the First Stipulation. Therefore, to the extent paragraphs 4, 6 and 7 of the First

---

[8] Thus, the claimants to the arbitration demand are: Robert True; Guillermo Cacho; Tal Shpritzman; Benjamin Mitas; Donald Degli; Panos Kelaidis; Omar Hassan; and Joseph Kufner. There was an issue as to whether Plaintiff Leidiana Llerena was added back as a claimant to the arbitration as a result of the Second Stipulation; TIAA's position was she was added back and included as a claimant based on the opening line of the Second Stipulation, which included her in the Second Stipulation. However, during the arbitration case management conference, Plaintiff's counsel made it clear Llerena did not want to pursue her arbitration claims and was relying on the First Stipulation as waiver to arbitration to exempt her from mandatory arbitration and to allow her to pursue all of her claims in this suit. Due to the fact Llerena was specifically included in the First Arbitration, TIAA Bank has chosen not to contest Plaintiff's claim or to compel the arbitration of Llerena's claims.  However, TIAA Bank's waiver of arbitration as to only Llerena cannot be applied to any other RLO, including Lesser or Gutfeld.

Arbitration attempted to set forth which RLOs would (and would not) be part of the arbitration if it proceeded as a collective action, those paragraphs were superseded by the Second Stipulation, providing only the named claimants and current opt-ins would proceed as the claimants to the Arbitration.  As a result of the Second Stipulation there was no longer any need to delineate which RLOs would be expected to arbitrate their claims if the collective action was approved because Plaintiffs withdrew their collective action claims.

Despite Plaintiffs' anticipated arguments, it is uncontested the parties never entered into a stipulation explicitly stating TIAA Bank waived the arbitration provisions in the 2013 and 2014 Performance Guides for Plaintiffs Lesser and Gutfeld. Indeed, Lesser and Gutfeld were not parties, claimants or opt-ins to the arbitration, and TIAA Bank had no knowledge they were represented by Plaintiff's counsel or asserting claims at the time of the First or Second Stipulation. (Exhibits H, I.)  There cannot be an explicit waiver of their claims when they were not in any way involved in the arbitration proceeding, a proceeding entirely distinct and separate from this lawsuit.

### b.  There has Been No Implicit Waiver of Arbitration for Plaintiffs Lesser and Gutfeld and/or Similarly Situated RLOs

Plaintiffs may also argue TIAA Bank implicitly waived the arbitration provisions through its actions or conduct.  In other words, Plaintiffs may claim TIAA Bank's conduct is inconsistent with compelling arbitration.  However, none of the three factors apply to TIAA Bank's conduct to prove implicit waiver.

### i.  There Has Been No Delay in Filing this Motion and No Other Motions/ Discovery in this Case

The first two factors do not apply to this case. As for the first factor, time elapsed, this case was filed by Plaintiffs on April 10, 2019; TIAA Bank filed the instant motion just over two months after Plaintiffs began this litigation. A two month delay in filing the motion to compel arbitration

16

is insignificant and does not justify waiver. *See Satcom Intern.*, 49 F.Supp.2d at 339 (holding a four month delay is not long enough to infer waiver); *PPG Indus.*, 128 F.3d at 104 (five months not enough to infer waiver).

Likewise, the second factor, the amount of litigation, does not apply.  The parties have not engaged in any discovery or motion practice in this case to date. None of the substantive issues have been litigated in this case. This case is in its infancy, as demonstrated by the fact the parties have not yet submitted the case management plan and scheduling order.

### ii.    There Has Been No Other Actions Inconsistent with Arbitration

Plaintiffs' sole argument for waiver in this case is TIAA Bank's alleged "inconsistent actions" in a separate arbitration case.  However, as one court recently stated, "Plaintiff fails to point the Court to any cases in which allegedly inconsistent conduct in a separate case involving a different party can waive the right to arbitrate." *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F.Supp.3d 610, 619 (N.D. Cal. Jan. 17, 2019), (citing *Lemus v. CMH Homes, Inc.*, 798 F.Supp.2d 853, 859 (S.D. Tex. 2011)) (noting Plaintiff's "unsuccessful argument for waiver based on Defendants' decision to litigate rather than arbitrate in a different case involving different parties."); *Bischoff v. DirecTV, Inc.*, 180 F.Supp.2d 1097, 1113 (C.D. Cal. 2002) ("[T]o hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd. A finding that DirecTV has waived its right to arbitrate in this case because it agreed to a settlement in [another] case would amount to a rule that a party to millions of arbitration agreements has no choice but to arbitrate all claims arising from those agreements if even a single settlement has occurred in a case."); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 n.4 (7th Cir. 2003) (Even if parties did not waive issue, judicial estoppel does not apply where Associates argued for arbitration and class certification in one case and agreed to litigate a class

action with arguably similar claims in another case with different parties because, among other things, they did not offer "any evidence that Associates argued in favor of litigation (and against arbitration) in that lawsuit.")  Even if there was legal precedent for Plaintiffs' argument, which is denied, TIAA Bank did not take "inconsistent actions." Indeed, TIAA Bank consistently stated that all claims arising before December 1, 2016, were subject to mandatory arbitration under the 2013 and 2014 Performance Guides, whereas all claims after December 1, 2016, were not subject to arbitration under the 2016 and 2018 Performance Guides. Indeed, in answering this lawsuit, TIAA Bank asserted an affirmative defense based upon the arbitration agreements. (Answer, Rec. Doc. 38, p. 12, Fourth Affirmative Defense.) This conduct is not inconsistent with this motion to compel arbitration.

### iii.    There Has Been No Prejudice to Plaintiffs

Plaintiffs also fail to demonstrate any prejudice to establish waiver. Indeed, the most important factor to the analysis is prejudice. *LG Electronics, Inc. v. Wi-Lan USA, Inc.*, No. 13-CV-2237(RA), 2015 WL 4578537, at *2 (S.D.N.Y. July 29, 2015) (citing *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir.2002)) ("The key to a waiver analysis is prejudice.") A party opposing a motion to arbitrate must show that it has been prejudiced by the movant's action. *Bousa Inc. v. Oy*, No. 92-CIV-6194 (RPP), 1993 WL 78019, at * 4 (S.D.N.Y. March 16, 1993) (citing *Com-Tech Assoc. v. Computer Assoc. Int'l Inc.*, 938 F.2d 1574, 1576 (2d Cir. 1991)).  In the Second Circuit, prejudice "refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Katsoris v. WME IMG, LLC*, 237 F.Supp.3d 92 (S.D.N.Y. 2017) (citing *PPG Indus.*, 128 F.3d at 107). This Court has held "prejudice exists where a party against whom waiver is asserted: (1) engages in discovery procedures not

available in arbitration, (2) makes motions going to the merits of an adversary's claims, or (3) delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." *Satcom Intern.*, 49 F.Supp.2d at 340 (citing *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993)). None of these factors apply. Plaintiffs have not been prejudiced in terms of delay, expense or damage to their position.

**B.     The Court Should Stay this Case Pending Arbitration**

Pursuant to the FAA § 3, "the [C]ourt must stay any suit or proceeding until arbitration has been completed if the action concerns 'any issue referable to arbitration' under a written agreement." *In re A2P SMS Antitrust Litig.*, 972 F.Supp. at 498 (citing *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d 237, 249 (S.D.N.Y. 2005)). "By its terms, the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

The ordinary remedy contemplated by the FAA is to stay proceedings rather than dismissal, especially if there are non-arbitrable claims remaining in the lawsuit.   *In re A2P SMS Antitrust Litig.*, 972 F.Supp. at 498-99 ("If, as here, a court concludes 'that some, but not all, of the claims in a case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.") The party seeking to stay must demonstrate there are issues common to the arbitration. *Id.* (citing *Am. Shipping Line, Inc. v. Massam Shipping Indus., Inc.*, 885 F.Supp. 499, 502 (S.D.N.Y. 1995)).  Once movant makes this initial showing, it must also demonstrate: (1) that a stay will not 'hamper the progress of the proceeding'; (2) the arbitration is expected to conclude within a reasonable time; and (3) the stay will not impose an "undue hardship" on the non-moving party. *Id.*  The Court has "substantial discretion" in deciding whether to stay litigation pending

arbitration; the Court may "stay a case pursuant to 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants.'" *Id.* (citing *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75 (2d Cir. 1997)).

A stay is appropriate in this case. First, there is no doubt that the matters to be arbitrated (specifically, whether Plaintiffs were properly classified as exempt, outside sales employees, or if not, are due premium pay for the overtime hours they worked, and, in the case of the Plaintiffs working in New York, "spread of wages" pay, for the applicable time periods between February 22, 2013 through December 1, 2016) concern the same legal issues as the claims pending before the Court. In other words, this Court also will be called upon to determine whether Plaintiffs were properly classified as exempt employees or, alternatively, are due overtime and other pay, for the time period on or after December 1, 2016. There is a substantial overlap in issues—the only difference being the applicable time periods. Allowing the arbitration to proceed first will help to ensure there is not conflict as to findings of facts and law. Further, the stay will not hamper or impede the progress of this litigation. In fact, there is nothing to demonstrate TIAA Bank has "impeded the progress or timely resolution of this dispute through arbitration" and, if there is any substantial delay, Plaintiffs can move to have the stay lifted in the event that progress stalls." *In re A2P SMS Antitrust Litig.*, 972 F.Supp. at 500. There would be minimal prejudice to Plaintiffs in a relatively short stay, whereas the prejudice to TIAA Bank in having to simultaneously defend multiple actions, i.e., the pre- December 1, 2016, claims in arbitration while also defending the post- December 1, 2016 claim in this lawsuit, would be substantial.

## IV.  CONCLUSION

TIAA Bank invokes the applicable arbitration agreements to resolve the wage claims arising before December 1, 2016. These arbitration agreements are valid, binding and enforceable, and, thus, Plaintiffs Lori Lesser and David Gutfeld, as well as the putative collective/class

members, must be compelled to arbitrate any wage claim arising before December 1, 2016. TIAA

Bank also seeks a stay of this litigation until the arbitration of the claims arising before December

1, 2016, can be completed.

Respectfully Submitted,

**FRILOT L.L.C.**

*/s/ Leslie W. Ehret*
Leslie W. Ehret, Esquire (LA 18494)
Renee Culotta, Esquire (LA 24436)
**FRILOT L.L.C.**
1100 Poydras Street, Suite 3700
New Orleans, Louisiana  70163
Telephone:     (504) 599-8000
Facsimile:     (504) 599-8100

***Attorneys for Defendant, TIAA, FSB***

And

NICOLETTI HORNIG & SWEENEY
Local Counsel for Defendant
BARBARA A. SHEEHAN (BS-7497)
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York  10005-1801
Phone:  (212) 220-3830