IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD MARTIN, LORI LESSER, LEIDIANA LLERENA, DAVID GUTFELD, and all others similarly situated,<br><br>Plaintiffs,<br><br>–v–<br><br>TIAA BANK, FSB, f/k/a Everbank Financial Corp.,<br><br>Defendant. | CIVIL ACTION<br><br>1:19 Civ. 01707 (AJN)<br><br>(<u>JURY TRIAL DEMAND</u>) |

**REPLY IN SUPPORT OF TIAA BANK'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant TIAA, FSB, d/b/a TIAA Bank, formerly known as EverBank, a Federal Savings Bank ("TIAA Bank") files this reply in support of its Motion to Compel Arbitration and Stay Proceedings. Plaintiffs Martin, Lesser, Llerena, and Gutfeld ("Plaintiffs") misstate critical facts and misdirect the Court from the controlling agreements. Lesser and Gutfeld's claims are governed by the Performance Guides in effect at the time their alleged claims accrued and the fact TIAA Bank entered into a stipulation with completely different claimants in a separate arbitration has <u>no effect</u> on their claims here, which accrued while the mandatory arbitration clauses were in effect.

**I. Many Facts Are Undisputed**

Plaintiffs' opposition makes plain that many facts are undisputed.

- There is no dispute the 2013 and 2014 Guides contain mandatory, enforceable arbitration provisions. (Rec. Doc. No. 43, pp. 8).

- There is no dispute claims brought by former employees who were employed prior to December 1, 2016, are subject to arbitration.

- There is no dispute the 2016 and 2018 Guides do not contain arbitration provisions.

- There is no dispute employees who were only employed after December 1, 2016, can proceed in federal court.

- There is no dispute the First and Second Stipulations were entered into by the named Claimants to the Arbitration—Robert True, Guillermo Cacho, and Leidiana Llerena—and TIAA Bank. (Rec. Doc. No. 43, pp. 11, 13).

- There is no dispute TIAA Bank waives enforcement of the arbitration provisions as to Llerena, and—per agreement—Llerena proceeded with her claims in this litigation.

Accordingly, the only meaningful dispute is whether Plaintiffs Lesser and Gutfeld, who were employed continuously both before and after the December 1, 2016 (the effective date of the 2016 Guide),[1] are subject to arbitration for their alleged claims which arose before December 1, 2016.

## II. Plaintiffs' Opposition Contains Critical Misstatements

Plaintiffs make several critical misstatements that are misleading and confusing because they intentionally make the effect of the First Stipulation unclear.

- Plaintiffs assert Lesser and Gutfeld filed arbitration claims prior to filing this lawsuit. *See* Rec. Doc. No. 43, p. 1 ("[p]rior to the initiation of the instant case, named Plaintiff Leidiana T. Llerena ("Plaintiff Llerena") and two other former RLOs, Plaintiff Lori Lesser ("Plaintiff Lesser" and Plaintiff David Gutfeld ("Plaintiff Gutfeld"), filed a

---

[1] And opt-ins who were similarly continuously employed both before and after the 2016 Guide – if a class is certified. For simplicity, TIAA Bank refers to employees who were continuously employed both before and after the 2016 guide as "crossover" employees.

2

Demand for Arbitration against Defendant based on a Performance Guide effective April 1, 2014 []"). This is untrue. Lesser and Gutfeld did not file an arbitration demand and were never named claimants nor opt-ins to the pending True arbitration.

- Plaintiffs assert TIAA Bank "succeeded" in having claims dismissed from arbitration as being outside the arbitration provision. (Rec. Doc. No. 43, p. 20). In fact, no claims were "dismissed" from the arbitration. Instead, the parties agreed the arbitration would cover certain parties and memorialized that agreement in the Second Stipulation.

- Plaintiffs assert "the Arbitrator excluded [Llerena] from the arbitration." (Rec. Doc. No. 43, p. 10). The arbitrator made no finding regarding the arbitrability of Llerena's claims. In the Initial Case Management Order, the arbitrator simply recognized the parties' dispute about whether Llerena was subject to mandatory arbitration. At the time the arbitrator issued the order, the arbitrator noted that, in the absence of an agreement, the parties would litigate what, if any claims, Llerena was required to arbitrate. (Rec. Doc. No. 44-2, p. 57).

- Plaintiffs assert the Second Stipulation makes no mention of Llerena. (Rec. Doc. No. 43, p. 10). However, the first line of the Second Stipulation explicitly states it is entered into by all three named Claimants, including Llerena. (Rec. Doc. No. 44-2, p. 50).

As explained below, the First Stipulation cannot control the resolution of this motion because it is only enforceable by and between the parties to the First Stipulation: True, Cacho, and Llerena and TIAA Bank.[2]

---

[2] Although not relevant, Plaintiffs state, "On March 15, 2019, TIAA Bank closed its Mortgage Division and terminated all RLOs from employment" and "Shortly, after the filing of the instant lawsuit, on or about March 15, 2019, Defendant permanently closed its Mortgage Division and eliminated the positions of all of its RLOs." (Rec. Doc. No. 43, p. 9, 14). This is untrue. TIAA Bank announced changes to its Home Mortgage Business on February 20, 2019, two days before this litigation was filed. TIAA Bank has not closed its "Mortgage Division;" it continues to originate home mortgage loans using both retail direct and correspondent lending.

3

### III. The Context of the First Stipulation Obviates Plaintiffs' Argument

The context of the First Stipulation is important.  First, Lesser and Gutfeld are not parties to the First Stipulation and cannot enforce it.  Plaintiffs are correct that the Second Circuit interprets and treats stipulations as though they are contracts.  (Rec. Doc. No. 43, p. 17 (citing *Nemiazer v. Baker*, 793 F.2d 58, 67 (2d Cir. 1986); *Broad Music, Inc. v. DMX, Inc.*, 683 F.3d 32, 43 (2d Cir. 2012)).  However, "[u]nder general contract rules, a non-party to a contract who is not an intended beneficiary cannot enforce the contract or recover for its breach." *In re Old Carco LLC,* 500 B.R. 683, 692 (Bankr. S.D.N.Y. 2013) (holding a non-party to a stipulation lacked standing to enforce the stipulation); *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018) (holding a non-party to a contract lacked standing to enforce the contract) (citing *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)).  Lesser and Gutfeld are unable to enforce the First Stipulation because they are not parties to it. Although there is no dispute regarding their absence from the First Stipulation, Plaintiffs use a sleight of hand[3] to avoid addressing this issue and shift mid-stream to a discussion of the "Parties to the Arbitration" or, more simply, the "Parties," without acknowledging or explaining that the "Parties" they are referring to do not include any of the "Plaintiffs" except for Llerena.[4]

Any reference to future opt-ins or a proposed class to the arbitration in the First Stipulation does not change this analysis.  "[A] plaintiff who files a proposed class action cannot legally bind

---

[3] And perhaps more deliberately misleading because, as stated earlier, Plaintiffs falsely reported to the Court that Lesser and Gutfeld were party to the True Arbitration.

[4] As noted, supra, Llerena is a party to the stipulation and it is undisputed TIAA Bank will not seek arbitration regarding any of Llerena's claims.  TIAA Bank's decision not to contest Llerena's participation in this case does not mean TIAA Bank agrees with Plaintiffs' interpretation of the First Stipulation.  In fact, as Plaintiffs note, Defendant has consistently taken the position the Second Stipulation nullified the First Stipulation. (Rec. Doc. No. 43, p.16).  Omission of TIAA Bank's requested language in the Second Stipulation does not mean TIAA Bank agreed the First Stipulation was operative and still in effect, it means only TIAA Bank and the arbitration Claimants were unable to reach agreement regarding the Second Stipulation's effect on the First Stipulation.  A stipulation can only reflect those terms on which there is agreement.

members of the proposed class before the class is certified." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (finding a stipulation limiting damages entered by a named plaintiff could not defeat federal jurisdiction because the named plaintiff had no authority to bind purported class members prior to certification); *see also Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (explaining a court's refusal to certify a class does not preclude future legal action by nonnamed members of a proposed class). Although decisions in "properly conducted class actions" may bind members of that class, mere inclusion in a proposed class, never certified, does not affect a non-party's rights or obligations. *Id.* (citing *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008)). At the time the First Stipulation was entered, Plaintiffs Lesser and Gutfeld were, if anything, unnamed members of a proposed, but uncertified, class.[5] At no point did Lesser and Gutfeld opt-in to the arbitration. Accordingly, even if Plaintiffs' reading of the First Stipulation is correct, which it is not, it is not relevant to determining this motion.

Second, although Plaintiffs argue subsequent actions are consistent with their reading of the First Stipulation, conduct by TIAA Bank in other litigation is not relevant to the instant motion. Nonetheless, actions and positions taken by TIAA Bank have remained consistent. TIAA Bank has consistently maintained the Second Stipulation superseded and nullified the First Stipulation and TIAA Bank acted accordingly. The Culotta letter supports TIAA Bank's consistent position that the Second Stipulation nullified the First Stipulation. (Rec. Doc. No. 43-3). As the Culotta letter demonstrates, TIAA Bank believed opt-in Omar Hassan was a crossover employee[6] continuously employed both before and after the 2016 Guide, and, thus, under the First Stipulation he would be excluded from the Arbitration. Claimants' counsel never corrected Culotta's mistaken

---

[5] As evidenced by the Second Stipulation, the proposed class was <u>never</u> certified and the Arbitration is proceeding with eight individual claimants. Accordingly, Lesser and Gutfeld have not and cannot opt-in to the Arbitration.
[6] For purposes of this motion, a "crossover employee" is a TIAA Bank employee employed before and after December 1, 2016.

belief regarding Hassan's employment dates nor did they exclude him from the arbitration. Therefore, at the time the Second Stipulation was entered into, even though TIAA Bank's counsel believed that the First Stipulation excluded Hassan as a crossover employee, TIAA Bank agreed to allow Hassan to be added as an opt-in claimant. The arbitration is the <u>only proceeding</u> where the First Stipulation would potentially be binding, but TIAA Bank's agreement to allow Hassan to proceed as an opt-in claimant demonstrates its position that the Second Stipulation completely negated and invalidated the First Stipulation.

      Third, it is clear the parties did not reach agreement regarding the Second Stipulation's effect on the First Stipulation. In the First Stipulation, Llerena, a crossover employee like Lesser and Gutfeld, dismissed her claims. (Rec. Doc. No. 44-2, pp. 46-47 at ¶ 8). Yet Llerena entered into the Second Stipulation, indicating to TIAA Bank that she was rescinding the dismissal and rejoining the arbitration. It was not until the case management conference that counsel for named claimants to the arbitration alleged this was a clerical error and Llerena would <u>not</u> arbitrate her claims. As detailed in the Arbitrator's Initial Case Management Order, "As to Claimant Leidiana T. Llerena, the parties are not in agreement. In the absence of agreement between the parties on the inclusion of this Claimant, she is excluded as a party to this case at this time." (Rec. Doc. No. 44-2, p. 57). The Arbitrator also specifically noted, "Ms. Llerena has expressed that she does not wish to bring her claim to arbitration" and indicated that, prior to inclusion in the arbitration, the existence of an agreement to arbitrate "will need to be separately submitted for resolution either to the Arbitrator or a Court with jurisdiction." *Id*. Contrary to Plaintiffs' assertions, after they entered the Second Stipulation, the parties to the arbitration understood <u>there was no agreement</u>, and, in fact, that they <u>disagreed</u> regarding arbitrability of claims by crossover employees.

### IV. The 2016 Plan's Effective Date Controls

The 2016 Guide's effective date is December 1, 2016, and nothing contained in the 2016 Guide changed the rights and obligations between the parties which existed prior to that effective date. (Rec. Doc. No. 44-1, p. 49). Plaintiffs argue the absence of an arbitration provision in the 2016 Guide "supersedes" the previous arbitration provisions contained in the 2013 and 2014 Guides and eliminates mandatory arbitration for claims which accrued while Plaintiffs were governed by the 2013 and 2014 Guides. In so doing, they rely heavily on the assertion the 2016 Guide "superseded" the prior Guides and encourage this Court to find the mandatory arbitration provisions do not apply to any of the claims asserted by the crossover employees, despite that they were indisputably subject to Guides which contained an arbitration provision. This reading is not supported by the law or the plain language of the 2016 Guide.

The 2016 Guide does not state it "supersedes" prior Guides and Plaintiffs' attempt to interject that language in the Guide must be rejected. Although Plaintiffs repeatedly state the 2016 Guide "superseded" prior Guides, the word "supersedes" does not appear in the 2016 Guide.[7] The relevant language in the 2016 Guide states, "For existing Participants, this Guide shall be effective as of **December 1, 2016** ("Guide Effective Date") unless stated otherwise." (Rec. Doc. No. 44-1, p. 49) (emphasis in original). Plaintiffs Lesser and Gutfeld were "existing Participants" governed by the 2014 Plan when the 2016 Guide went into effect. The plain language of the 2016 Guide states, as of December 1, 2016, the 2016 Guide governs their employment; there is no suggestion the new 2016 Guide would apply retroactively or nullify the arbitration provisions in the previous

---

[7] Nor is TIAA Bank judicially estopped from arguing the plain language of the 2016 Guide controls. As Plaintiffs note, judicial estoppel requires Plaintiffs to demonstrate TIAA Bank advanced a position which was "adopted by the court." (Rec. Doc. No. 43, p. 19). Thus far, the arbitrator in the arbitration has not "adopted" any positions because there have been no disputes actually submitted to the arbitrator. The arbitrator has simply memorialized the stipulations, the provisions which the parties could agree upon. These stipulations simply do not meet the standard for judicial estoppel.

Guides. Importantly, the arbitration provision (or lack thereof) was but a small part of the Guides. The thrust of these Guides was establishing compensation for loan origination. Applying Plaintiffs' arguments to compensation highlights their absurdity—no participant would expect compensation for a loan originated in 2014 to be governed by the 2016 Guide.

Similarly, the law does not support a post-hoc modification of the rights of the employees. Under the FLSA, each instance of underpayment is a separate violation. "A discrete FLSA claim accrues with each paycheck that fails to properly compensate for overtime work, and the theory of a "continuing violation" will not avoid the bar to claims for overtime that accrued outside of the limitations period." *Glass v. A.K. Allen Co.*, No. 10-CV-804 (ADS)(ETB), 2010 WL 11632764, at *2 (E.D.N.Y. Oct. 21, 2010). The "cause of action accrues for purposes of § 255(a) at each regular payday immediately following the workweek during which services were rendered and for which overtime compensation is claimed." *Acosta v. Yale Club of New York City*, No. 94 CIV.0888(KTD), 1995 WL 600873, at *3 (S.D.N.Y. Oct. 12, 1995) (citing *Knight v. Columbus*, 19 F.3d 579, 582 (11th Cir.), cert. denied, 513 U.S. 929 (1994)).

If Plaintiffs are correct and they were misclassified as exempt employees, any right to sue for overtime back wages accrued with each and every instance of underpayment. Indisputably, Plaintiffs were subject to a mandatory arbitration provision in 2013, 2014, 2015, and the vast majority of 2016. This Court must use a "snapshot" approach and look to the Guide in effect at the time of the violation to determine the legal rights and obligations between the parties. The 2016 Guide cannot apply to any violation which accrued prior to its December 1, 2016, effective date because those rights are governed by the agreements in effect at the time those violations allegedly occurred.

### V. This Court Should Grant a Discretionary Stay

It is within this Court's discretion to grant a stay in this matter and Plaintiffs have offered no meaningful arguments to the contrary. In particular, Plaintiffs' primary argument regarding prejudice should be dismissed. This Court must determine the actual prejudice to the current plaintiffs, not the speculative prejudice to hypothetical future opt-in plaintiffs. It is unlikely arbitration of wage claims arising before December 1, 2016, will create a substantial delay, but even if it did, the effect of the delay will be minimal because the statute of limitations is tolled for all current plaintiffs, including opt-ins.

### VI. Conclusion

This Court should compel arbitration of all claims prior to December 1, 2016, because they are governed by valid, binding, and enforceable arbitration provisions. This Court should compel Plaintiffs Lesser and Gutfeld, as well as the putative collective/class members, if applicable, to arbitrate any wage claim arising before December 1, 2016, and stay the remainder of this litigation until such arbitration can be completed.

Respectfully Submitted,

**FRILOT L.L.C.**

*/s/ Leslie W. Ehret*
Leslie W. Ehret, Esquire (LA 18494)
Renee Culotta, Esquire (LA 24436)
**FRILOT L.L.C.**
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8000
Facsimile: (504) 599-8100
***Attorneys for Defendant, TIAA, FSB***

And

        NICOLETTI HORNIG & SWEENEY
Local Counsel for Defendant
BARBARA A. SHEEHAN (BS-7497)
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801
Phone:  (212) 220-3830