USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __5/21/20__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Lori Lesser, *et al.*,

                Plaintiffs,

    –v–

TIAA Bank, FSB,

                Defendant.

19-cv-1707 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Current and former employees of TIAA Bank bring this action under the Federal Labor Standards Act (FLSA) and analogous state-law statutes. Defendant TIAA Bank has moved to compel arbitration as to two named Plaintiffs' claims arising before December 1, 2016, pursuant to arbitration agreements between TIAA and these two parties. TIAA Bank also asks to stay this entire litigation pending the arbitration of these claims. For the reasons that follow, the Court GRANTS TIAA's motion to compel arbitration but DENIES its request for a stay.

## I. BACKGROUND

### A. Plaintiffs' Employment with TIAA

Unless otherwise noted, the following facts are undisputed. TIAA "is [a] federally chartered bank" that "does business across the United States of America, including, but not limited to, regularly conducting business in the States of New York, Florida, and New Jersey." Complaint, Dkt. No. 2, ¶ 15. Plaintiffs in this action are Richard Martin, Lori Lesser, Lediana Llerena, and David Gutfeld. All four individuals either worked or currently work for TIAA Bank or its predecessor, Everbank, as Retail Loan Officers (RLOs) in these three states. *Id.*

1

¶¶ 10–13, 45.  Their primary duty was to sell residential mortgage loans.  *Id.* ¶ 50.  TIAA paid them "in part [or] in whole in commissions."  *Id.* ¶ 46.

TIAA provided the terms of RLOs' compensation in documents titled Performance Guides.  As TIAA explains, "[t]he purpose and scope of the Performance Guides was to enumerate" the compensation of these employees.  TIAA Br., Dkt. No. 40-1, at 3.  The Guides therefore describe things like these employees' "(a) . . . cash commission opportunities; (b) the method for calculation of cash commission compensation; (c) the timing for payment of cash commission compensation; (d) applicable performance standards; and (e) other procedures and requirements for which the [RLO] is responsible."  *Id.*; *see, e.g.*, Dkt. No. 44, Ex. A (2013 Guide).

These Performance Guides did not remain consistent throughout Plaintiffs' employment at TIAA; instead, they were subject to periodic revision.  Before the Court are four Guides, respectively issued in 2013, 2014, 2016, and 2018.  *See* Dkt. No. 44, Ex. A (2013 Guide); Dkt. No. 44, Ex. B (2014 Guide); Dkt. No. 44, Ex. C (2016 Guide); Dkt. No. 44, Ex. D (2018 Guide).  For purposes of this case, the 2013 and 2014 Guides differ from those issued in 2016 and 2018 in one material respect: the former contain an arbitration clause, and the latter do not.  Both the 2013 and 2014 Guides contained the following provision:

> Disputes
> Any dispute relating to or arising under or in connection with this Guide shall be submitted to mandatory arbitration in Duval County, Florida, in accordance with the Commercial Rules of the American Arbitration Association then in effect, and judgment upon the award rendered pursuant to such arbitration may be entered in any court of competent jurisdiction.

2013 Guide at 13; 2014 Guide at 27.  In 2016, however, TIAA removed this arbitration provision from its new Performance Guide.  *See* 2016 Guide.  The 2018 Guide likewise did not contain an arbitration provision.  *See* 2018 Guide.

2

## B. Procedural History

The history of the parties' litigation begins in arbitration. In September 2018, three former RLOs—including one of the Plaintiffs here, Llerena—filed a demand for arbitration with the American Arbitration Association against TIAA. *See* Dkt. No. 44, Ex. G. They alleged the same wage-and-hour claims as the ones here. See *id.* ¶¶ 34–41. The next month, TIAA filed an answer to the demand. The parties then entered into two stipulations, both of which are central to this litigation. *See* Dkt. No. 44, Ex. H (First Stipulation); Dkt. No. 44, Ex. I (Second Stipulation). The Court discusses each stipulation in detail below. These claims are still being arbitrated.

Plaintiffs filed this action on February 22, 2019. *See* Dkt. No. 1. They allege that TIAA misclassified them as outside sales employees, thus exempting them from the protection of various labor laws. Under the proper classification, they allege, they are owed backpay for wages and overtime. They therefore bring suit under the Federal Labor Standards Act and analogous New York and New Jersey statutes. Compl. ¶¶ 72–95. Plaintiffs seek to certify a collective and a class of all Residential Loan Officers who worked for TIAA nationwide. *Id.* ¶ 19. Plaintiffs Martin and Lesser purport to represent a subclass of those RLOs who worked in New York, and Plaintiff Gutfeld those RLOs who worked in New Jersey. *Id.* ¶¶ 27, 36. About 40 additional RLOs have filed Consent Forms to join this lawsuit. *See* Filed Consent Forms, Dkt. Nos. 22, 27, 36, 48, 49, 50.

On July 3, 2019, TIAA moved to compel arbitration as to a subset of Plaintiffs' claims and stay this entire proceeding in the interim. Specifically, TIAA requests that the Court mandate arbitration as to Lesser and Gutfeld's claims arising before December 1, 2016. It does not seek arbitration of Lesser and Gutfeld's claims arising after that date, or arbitration of any of

the other two Plaintiffs' claims.  This motion is now before the Court.

## II. LEGAL STANDARD

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, embodies a national policy favoring arbitration based on the desire to preserve the parties' ability to arbitrate, not litigate, their disputes.  *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019).  Any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration.  *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015); *accord Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 215 (S.D.N.Y. 2019).  In determining whether an action is arbitrable, a court must consider (1) whether the parties agreed to arbitrate and, if so, (2) whether the scope of the arbitration agreement encompasses the claims at issue.  *Holick*, 802 F.3d at 394; *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) ("The threshold question facing any court considering a motion to compel arbitration is therefore whether the parties have indeed agreed to arbitrate."); *accord Coscarelli*, 364 F. Supp. 3d at 215.  These threshold questions are determined by "state contract law principles."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment."  *Id.*  Courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and must "draw all reasonable inferences in favor of the non-moving party."  *Id.*

## III. PLAINTIFFS LESSER AND GUTFELD MUST ARBITRATE PRE-DECEMBER 2016 CLAIMS

The Court begins with TIAA's request to compel arbitration of Lesser and Gutfeld's claims arising before December 1, 2016.  Because the plain text of their employment agreements

4

compels arbitration, and Plaintiffs present no successful counterargument, the Court mandates these claims be decided in arbitration.

### A. The Three Types of Claims

The Court begins by sorting the claims in this litigation into three categories, as determined by the employees' dates of employment. First, there are some RLOs who left TIAA's employment before December 1, 2016. Because those employees never signed one of the later Performance Guides, their claims are entirely subject to arbitration. None of the named Plaintiffs fall into this first category. Second, there are employees who began working at TIAA after December 1, 2016, and therefore worked exclusively under the no-arbitration regime. Plaintiff Martin is an example; he worked at TIAA from July 2017 to May 2018, meaning he was subject only to the Guides not containing arbitration provisions. Compl. ¶ 11. These employees' wage claims are not subject to arbitration. Indeed, TIAA concedes that Martin brings "wage claims . . . for a time period after December 1, 2016, the effective date of the Performance Guide containing no arbitration provision . . . Therefore, none of Martin's claims are arbitrable." TIAA Br. at 2 n.1. And TIAA admits that "since there was no agreement to arbitrate the claims arising on or after December 1, 2016, those claims are properly before this Court." *Id.* at 5.

Third, there are those employees who worked under both regimes. Plaintiffs Lesser and Gutfeld fall into this category—they began working at TIAA in 2013 and 2014 respectively and both continue to work there. *Id.* ¶¶ 13, 14. These employees therefore were subject to *both* kinds of Guides. The Court refers to individuals who, like Lesser and Gutfeld, worked across both time spans as crossover employees.[1]

---

[1] Plaintiff Llerena worked at TIAA from September through December 2016, and she also is a crossover employee. See Compl. ¶ 10; TIAA Br. at 5 n.4 (noting that Llerena was employed after December 1, 2016). However, "TIAA Bank waives enforcement of the arbitration provisions as to Llerena, and—per agreement—Llerena proceeded with her claims in this litigation." TIAA Reply Br. at 2. TIAA therefore

The arbitrability of claims for employees in the first or second categories is clear: the former are subject to arbitration, and the latter are not. TIAA's motion to compel arbitration focuses on the third category of cases. And even as to crossover employees, there is no dispute their claims arising *after* 2016 need not be arbitrated. As TIAA explains, therefore, "the only meaningful dispute [in this case] is whether Plaintiffs Lesser and Gutfeld, who were employed continuously both before and after the December 1, 2016 (the effective date of the 2016 Guide), are subject to arbitration for their alleged claims which arose before December 1, 2016." TIAA Reply Br. at 2. TIAA thus moves *only* "for an Order compelling Lesser and Gutfeld to arbitrate their wage claims arising before December 1, 2016." Def. Br. at 1. This motion to compel arbitration thus turns on one question: Are the crossover employees' pre-December 2016 claims subject to mandatory arbitration? As the Court explains, the answer is yes.

### B. The Parties Agreed to Arbitrate These Claims

"The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate" at all. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). TIAA argues that the crossover employees have agreed to arbitrate any wage-and-hour claims arising before December 1, 2018.

#### 1. The 2013 and 2014 Guides Compel Arbitration

The Court begins with the text of the arbitration clause, as it must. *See Starr Indem. & Liab. Co. v. Water Quality Ins. Syndicate*, 320 F. Supp. 3d 549, 569 (S.D.N.Y. 2018), *aff'd*, 775 F. App'x 4 (2d Cir. 2019) ("[Under New York law,] as a matter of contract interpretation—as with statutory construction—the Court begins with the plain text of the term at issue."). As noted, the 2013 and 2014 Guides provide that "[a]ny disputes relating to or arising under or in

does "not challenge Llerena's ability to bring all of her claims in this lawsuit." TIAA Br. at 1 n.2.

6

connection with this Guide shall be submitted to mandatory arbitration . . . ." 2013 Guide at 13; 2014 Guide at 27.  This case raises *disputes* that *relate to* and are *in connection with* the 2013 and 2014 Guides—Plaintiffs are challenging their compensation during those years, which was governed by these Guides, as violative of the labor laws.  According to the contract's plan text, therefore, these claims *shall* be submitted to arbitration.

Plaintiffs do not challenge these arbitration provisions as substantively or procedurally unconscionable.  *See generally Tong v. S.A.C. Capital Mgmt*., LLC, 860 N.Y.S.2d 84, 85 (1st Dep't 2008) (noting that, under New York law, an arbitration agreement is invalid if it is unconscionable or was the product of economic duress); *accord Molina v. Kaleo, Inc*., 363 F. Supp. 3d 344, 349 (S.D.N.Y. 2019).  Nor do they argue that the 2013 and 2014 Guides are invalid for another reason.  *See generally Ragone v. Atl. Video at Manhattan Ctr*., 595 F.3d 115, 121 (2d Cir. 2010) (under New York law, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." (internal quotation marks omitted)).

Instead, Plaintiffs argue that the 2013 and 2014 arbitration provisions are inapplicable because the later Performance Guides superseded them.  They contend that the "2016 Performance Guide amended and superseded the 2014 Performance Guide- and removed the arbitration provision from its terms."  Pl. Br. at 17.  Although Plaintiffs do not use the term, this is effectively an argument for novation—they are arguing that the 2016 Guide extinguished and replaced the parties' rights and obligations under the previous agreements.  *See Donnenfeld v. Petro, Inc*., 333 F. Supp. 3d 208, 217 (E.D.N.Y. 2018) ("Under New York law, a novation is a new contract replacing and extinguishing a prior contract." (internal quotation marks omitted)). Under New York law, a novation requires (1) a valid previous obligation, (2) an agreement for a

7

new contract, (3) the actual formation of a new contract, and (4) an intention to extinguish the old contract. *See Flaum v. Birnbaum*, 120 A.D.2d 183, 508 N.Y.S.2d 115, 120 (1986). The underlying principle is that "novation requires the consent of all parties to substitute one obligation or agreement for another." *Raymond v. Marks*, 116 F.3d 466, 466 (2d Cir. 1997).

Although the first three requirements are met, the Court concludes that, on the undisputed facts, the parties had no intention to extinguish the old contract. Indeed, the 2016 Guide explicitly states "[f]or existing Participants, this Guide shall be effective as of **December 1, 2016** ("Guide Effective Date") unless stated otherwise." (emphasis in original). Plaintiffs Lesser and Gutfeld were "existing Participants" governed by the 2014 Plan when the 2016 Guide went into effect. The 2018 Guide contains the same language. 2018 Guide at 4 ("For existing Participants, this Guide shall be effective as of July 1, 2018"). The parties could have extinguished the earlier Guides by setting the effective date years before—but they did not. And nothing else in the parties' contracts indicates any intention to replace their earlier rights and duties. Indeed, it is undisputed that the 2013 and 2014 Guides provided a detailed compensation regime for TIAA employees. And it is likewise undisputed the parties performed under those regimes. It would be senseless for the 2016 Guide to supplant those compensation regimes, years later and after the compensation has already been paid. The Court concludes that, as a matter of law, the parties did not "supersede" their earlier agreement to arbitrate pre-December 2016 claims by entering into the 2016 and 2018 Guides. *See C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F.Supp.2d 419, 434 (S.D.N.Y. 2005) ("If the parties have manifested their intent on the face of the document, the court can [decide novation] as a matter of law." (internal quotation marks omitted)). The parties thus agreed to arbitrate, and the scope of the arbitration agreement clearly encompasses the claims at issue.

### 2. The First Stipulation Did Not Change the Parties' Obligations Under the 2013 and 2014 Guides

Plaintiffs also argue that the Court should ignore these 2013 and 2014 arbitration clauses because of the First Stipulation, entered into in the arbitration proceeding between three former employees, including Llerena, and TIAA.

The Court rejects Plaintiffs' argument that the First Stipulation "controls" the arbitration inquiry. Pl. Br. at 12. The arbitration inquiry is controlled by the arbitration provision itself. The First Stipulation does not "supersede" the 2013 and 2014 Guides. *Id.* To start, the Stipulation states that it is an agreement between "The Parties." First Stipulation at 1. And it defines the Parties as "Claimants, Robert S. True, Leidiana T. Llerena, and Guillermo A. Cacho . . . and Respondent, TIAA, FSB, formerly known as EverBank, a Federal Savings Bank." *Id.* The relevant crossover Plaintiffs here, Lesser and Gutfeld, were not party to the arbitration and thus were not party to the First Stipulation. They had no notice of this Stipulation, no opportunity to be heard, and no role in its negotiation. The Stipulation applies only to TIAA and three other former employees; to the extent the First Stipulation "supersedes" any earlier contractual obligations, it only does so as to those three individuals.[2] Moreover, it is similarly senseless for the First Stipulation to supersede the Performance Guides. The Stipulation, by its terms, governs the "scope of arbitration." *Id.* It addresses the employees who are and are not subject to arbitration. It says nothing about their compensation, the primary subject of the Performance Guides, and nothing suggests an intent to supersede those Guides. On the undisputed record, the First Stipulation therefore did not alter the parties' contractual

---

[2] Plaintiffs do not argue that crossover employees like Lesser and Gutfeld were third-party beneficiaries to this contract. Nor do Plaintiffs argue that TIAA waived its right to arbitration by entering into the Stipulation—indeed, they expressly disclaim reliance on any waiver theory. *See* Pl. Br. at 16 ("TIAA did not 'waive' its arbitration provision: it instead advanced a position that the 2014 Performance Guide was *superseded* by the 2016 Guide . . ."). The Court therefore does not consider these arguments.

9

responsibilities under the 2013 and 2014 Performance Guides.

### C. Judicial Estoppel Does Not Apply

Crossover Plaintiffs also argue that their pre-December 2016 claims are not subject to mandatory arbitration because of judicial estoppel. The Court rejects this argument.

Judicial estoppel is an equitable doctrine that prevents a party from improperly taking inconsistent legal positions with respect to the same set of facts. The Supreme Court has described the doctrine as follows: "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal citations and quotation marks omitted). Judicial estoppel therefore "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* The rule is intended to "protect judicial integrity by avoiding the risk of inconsistent results in two proceedings," *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993), and to prevent "improper use of judiciary machinery," and is therefore "an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. at 750 (citations omitted).

"[T]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (citation omitted). "Nevertheless, in evaluating whether to apply the doctrine of judicial estoppel, courts generally look for the existence of three factors": (1) that a party's new position is "clearly inconsistent" with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and

10

(3) that the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. at 750–51); *see also DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) ("[t]ypically, judicial estoppel will apply if" these three factors are present). The Second Circuit limits "judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005) (quoting *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997)).

Plaintiffs' judicial estoppel theory fails because there is no *clear inconsistency* between TIAA's current position and the First Stipulation. The First Stipulation's sixth paragraph states:

> Claimants (or potential claimants) whose employment ended prior to December 1, 2016, are subject to the arbitration provisions contained in the 2014 Performance Guide, and those employees who meet the criteria set forth in paragraph 4 above are not subject to said arbitration provision..

First Stipulation, ¶ 6.[3] This paragraph addresses the first category of employees—those whose employment at TIAA occurred exclusively under the arbitration regime. None of Plaintiffs fall into this category. There is nothing inconsistent with the paragraph and TIAA's position on the third category of employees, crossovers.

The fourth paragraph of the stipulation directly addresses crossover employees. That provision provides:

> The Parties stipulate because the 2016 Performance Guide does not contain an agreement to arbitrate claims, any employees who were still continually employed by Everbank/TIAA on December 1, 2016, without any break in the employment relationship, regardless of the start date of their employment, were/are subject to

---

[3] The Court uses New York contract-law principles to interpret these stipulations. *See Vincent's of Mott St., Inc. v. Quadami, Inc.*, No. 05-cv-4358 (SLT), 2009 WL 10705889, at *6 (E.D.N.Y. Sept. 28, 2009), *aff'd*, 423 F. App'x 46 (2d Cir. 2011) ("The Second Circuit has implicitly held that the state law of the forum applies to stipulations settling federal claims.") (citing *Waldman ex rel. Elliott Waldman Pension Trust v. Riedinger*, 423 F.3d 145, 149 (2d Cir. 2005); *Torres v. Walker*, 356 F.3d 238, 245-46 (2d Cir. 2004)). As noted, under New York law, contractual interpretation begins with plain text.

11

>  the 2016 Performance Guide, and as such, said employees' claims are not subject to arbitration.

First Stipulation, ¶ 4.

There is no clear inconsistency between this paragraph and TIAA's position on crossovers in this litigation. This is in large part due to three words Plaintiffs all but ignore: "The Parties stipulate . . ." As noted, the First Stipulation was a negotiated agreement between TIAA and three of its former employees. To be sure, the First Stipulation would foreclose TIAA from subjecting any crossovers to that particular arbitration. This makes sense given the representative nature of labor-law cases. Under the FLSA, similarly situated employees can generally opt into cases. And such cases also often proceed under Rule 23 as opt-out class actions. The Stipulation thus sets the parameters of the arbitration proceeding. Several other parts of the Stipulation make this clear. Indeed, the First Stipulation is titled "Stipulation Regarding Scope of Arbitration." First Stipulation at 1. It also provides that "[e]ven provided this Arbitration proceeds as a collective action, Claimants will not seek, and the Arbitrator will not allow, any person to join, 'opt in,' or otherwise be a part of this Arbitration if s/he meets the criteria set forth in paragraph 4 above." First Stipulation ¶ 7. The First Stipulation generally, and Paragraph 4 specifically, therefore defined the scope of a particular arbitration proceeding. It did not define TIAA's legal rights against all of its former employees, anywhere in the country, in any court proceeding, in perpetuity. TIAA is therefore not judicially estopped from its position in this litigation that Plaintiffs Lesser and Gutfeld must arbitrate pre-December 2016 claims.

* * *

In sum, Plaintiffs Lesser and Gutfeld are compelled to arbitrate claims arising before December 1, 2016. The remainder of their claims, as well as the claims of Plaintiffs Martin and

Llerena, are properly before the Court.

## IV. TIAA'S REQUEST FOR A STAY IS DENIED

The Court next considers TIAA's request to stay this action pending arbitration of Lesser and Gutfeld's pre-December 2016 claims. If, as here, a court concludes "that some, but not all, of the claims in [a] case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration." *Guyden v. Aetna*, 544 F.3d 376, 382 (2d Cir. 2008) (internal quotation marks omitted). The Court has substantial discretion to "stay a case pursuant to 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75 (2d Cir. 1997) (quoting *Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964)).

"The party seeking a stay must first demonstrate that 'there are issues common to the arbitration and the court proceeding,' and then show that 'those issues will be finally determined by arbitration.'" *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 499 (S.D.N.Y. 2013) (quoting *Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc*., 885 F.Supp. 499, 502 (S.D.N.Y. 1995)). Here, TIAA is correct that there are common issues between this proceeding and the arbitration. Both share common legal questions: Were the Residential Loan Officers misclassified under the labor laws? And if so, are they entitled to backpay for wages and overtime? These questions are common for all three categories of employees; it does not matter, for instance, that Lesser and Gutfeld are crossovers and Plaintiff Martin worked for TIAA only after 2017. TIAA's initial burden is thus met.

As this Court explained in *A2P*, if "the movant can make this initial showing, it then bears the burden of demonstrating: (1) that a stay will not hamper the progress of the proceeding, (2) that the arbitration is expected to conclude within a reasonable time, and (3) that the stay will

13

not impose an undue hardship on the non-moving party." *Id.* (cleaned up); *accord Hard Rock Cafe Intern., (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F.Supp.2d 552, 563 (S.D.N.Y. 2011).

A stay will hamper the progress of the instant proceeding. As discussed, TIAA only moves to arbitrate Lesser and Gutfled's pre-2016 claims. In other words, TIAA asks to stay the entire proceeding because a *portion* of a *portion* of the claims in this case are subject to arbitration. But this would impede adjudication of Lesser and Gutfeld's post-2016 claims, the claims of the other two Plaintiffs in this matter, the claims of the forty-plus individuals who have opted into these proceedings, and any future opt ins. It is undisputed that, no matter the outcome of the arbitration, the Court will have to decide myriad, post-2016 claims. TIAA has not met its burden on the first of these three elements, and a stay is thus inappropriate.

TIAA contends that proceeding in this case while the arbitration is pending risks inconsistent decisions. To begin, TIAA provides no authority for the proposition that this factor should even be considered. Indeed, if it were, this factor would always weigh in favor of the movant—there is always a possibility that an arbitrator will come to a different conclusion than the Court regarding "findings of law or fact," Def. Br. at 20. Moreover, Plaintiffs are correct that this argument ignores TIAA's request to compel *individual* arbitration of Lesser and Gutfeld's claims, and its position that representative litigation was not warranted in the earlier arbitration. These different arbitrators may very well issue inconsistent decisions as well, and TIAA provides no persuasive distinction justifying a stay. Its request for a stay is thus denied.

## V. CONCLUSION

For the reasons above, the Court GRANTS TIAA's motion to compel arbitration but DENIES its request for a stay. This resolves Dkt. No. 40. As oral argument is not necessary to the resolution of this motion, that request is DENIED. This resolves Docket No. 41.

The Court will schedule an initial conference in this matter by separate order.

SO ORDERED.

Dated: May 21, 2020
      New York, New York

_____
ALISON J. NATHAN
United States District Judge