

SWARTZ SWIDLER, LLC
ATTORNEYS AT LAW

1101 Kings Highway N., Ste 402
Cherry Hill, NJ 08034
Tel: (856) 685-7420
Fax: (856) 685-7417
jswidler@swartz-legal.com

August 3, 2020

**VIA E-MAIL AND ECF**

The Honorable Barbara Moses, USMJ          Mr. D. Andrew Byrne, Arbitrator
Daniel Patrick Moynihan                    c/o American Arbitration Association
United States Courthouse                   2200 Century Parkway, Suite 300
500 Pearl Street                           Atlanta, GA 30345
New York, NY 10007-1312                    Andrew@byrnepa.com

> Re:    ***Lesser, et al. v. TIAA Bank*** **(SDNY)**, **Docket No.: 19-01707**
>        ***True v. TIAA Bank***, **AAA Case No.: 01-18-0003-3453**

Dear Judge Moses and Arbitrator Byrne:

Please allow this letter to formally inform the Court and Arbitrator that the Parties have

reached a settlement which completely and finally resolves the above-referenced lawsuit and

arbitration proceedings and settles the wage and hour claims brought by 54 former retail loan

officer employees of TIAA Bank ("Plaintiffs").

The above-referenced cases arise out of TIAA Bank's policy to compensate its retail, non-

office mortgage loan officer employees ("Retail Loan Officers" or "RLOs") using a commission-

based structure pursuant to which they were not paid for overtime hours worked because TIAA

Bank regarded these RLOs as outside sales employees, exempt from the requirements of the Fair

Labor Standards Act ("FLSA") and the similar, state law wage and hour statutes asserted in this

action as well as the arbitration. It is undisputed TIAA Bank did not record hours worked by the

RLOs, although the Parties dispute the number of hours alleged to have been worked by the



Plaintiffs. Importantly, the central dispute between the Parties with respect to liability was whether RLOs' job duties rendered them exempt from the requirements of the FLSA, 29 U.S.C. § 213(a)(1), the New York Labor Law, and the New Jersey Wage and Hour Act under those statutes' outside sales exemption.

The litigation has been pending for approximately one year and a half and the arbitration has been pending for almost two (2) years. During that time, the Parties engaged in significant discovery, including analyzing a significant amount of ESI data, and in disputed motion practice, both in the court and in arbitration proceedings. The Parties attended two (2) separate, full-day mediations before a highly respected mediator and Florida Board Specialist in Certified Labor & Employment Law, Marlene Quintana, Esquire, and only reached a settlement after extensive further negotiations following the second mediation.

The proposed settlement resolves all claims in both the litigation and the arbitration, and it provides significant and substantial financial concessions from TIAA Bank directly benefiting the 54 individuals who have agreed to and who seek the Court's approval of the settlement. Each of the 54 individuals who are to be paid from the settlement have individually signed the settlement agreement, and each has individually expressed his or her complete support for the settlement terms and his or her desire for prompt settlement approval.

The settlement requires TIAA Bank to pay the total sum of $3.5 million to the 54 Plaintiffs/Claimants, which includes attorneys' fees. The settlement allocation mandates that each RLO will receive a base payment of $10,000 *in addition to* a prorated amount based on the length of their employment and their rate of pay with TIAA Bank during the relevant statute of



ATTORNEYS AT LAW

limitations, which is assumed to be three (3) years for purposes of the proposed settlement allocations[1], except for New York and California RLOs, who, based on their claims under applicable state law, seek recovery under a six (6) year and four (4) year statute of limitations, respectively.

As detailed herein, the payments naturally vary between Plaintiffs, from $11,503 to $143,460, with an average payment of just over $42,000.  In exchange for such payments, the individuals release only their wage and hour claims against TIAA Bank.  The settlement is not subject to confidentiality.

In FLSA actions, the Second Circuit instructs that Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure requires the Court review and scrutinize a proposed settlement agreement to ensure that it is fair. *See Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015); *Fisher v. SD Protection Inc.*, 948 F.3d 593 (2d Cir. 2020); *see also Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 338 (S.D.N.Y. 2012). In accordance with Judge Nathan's rules, and as ordered by Judge Nathan on June 25, 2020 (ECF Doc. 56), the parties hereby submit this joint letter and attachments.  In addition to the settlement agreement, Exhibit 1-A attached to Decl. of Justin L. Swidler, pursuant to Judge Nathan's rules governing settlement of FLSA cases and her Order (ECF Doc. 56), this submission provides:

    i.      Discussion of the considerations detailed in *Wolinksy*, 900 F. Supp. 2d at 335–36.
    ii.     A description of the method used to calculate the settlement amounts.

---

[1] The parties had significant disputes regarding the applicable statute of limitations to apply to the instant case and the Arbitration. The general statute of limitations for FLSA claims is two years, or three years if the FLSA violation was willful. 29 U.S.C. § 255(a).  The settlement agreement jointly prepared by the parties does not contain any stipulation or concession as to what the statute of limitations is, but the parties did stipulate to the use of the three-year limitations for purposes of calculating the portions of the settlement amount to which each Plaintiff is entitled.


ATTORNEYS AT LAW

  iii. A list of the hours plaintiff(s) worked and at what wages. This should be detailed enough to enable the Court to follow the Parties' steps in calculating the settlement amounts. If the Parties disagree on hours worked or wages owed, both Parties' estimates should be included.

  iv. Detailed billing records to support any request for attorneys' fees, documenting the hours expended and the nature of the work done; and

  v. If the proposed settlement contains a non-disparagement provision, authority and argument demonstrating that the proposed provision is fair and reasonable.

  The Court will not ordinarily approve settlement agreements that contain a confidentiality provision or a general release from all liability. See *Wolinsky*, 900 F. Supp. 2d at 337–40; *Flores-Mendieta v. Bitefood Ltd.*, No. 15-CV-4997(AJN), 2016 WL 1626630, at *2 (S.D.N.Y. Apr. 21, 2016); see *also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006)

## I. *Wolinksy* Factors

"[B]efore a district court enters judgment; it must scrutinize the settlement agreement to determine that the settlement is fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cheeks,* 796 F.3d at 206.

In determining whether the settlement is fair and reasonable, the court should consider the totality of the circumstances including "(1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion." *Wolinsky*, 900 F. Supp. 2d at 335 (internal citations omitted); *see also Fisher*, 948 F.3d at 593 (citing aforementioned *Wolinsky* factors with approval).

*Wolinksky* further held that a court should consider certain "public interest" factors when determining if a settlement under the FLSA should be approved. *Wolinsky*, 900 F.Supp.2d at 336.


ATTORNEYS AT LAW

These factors include whether there are others similarly situated to the plaintiffs, the likelihood that plaintiffs' circumstances will recur, the history of non-compliance with the FLSA from the employer or other employers in the same industry or geographic region, and whether there exists desirability to resolve the case on a complete record with a "pointed determination of the governing factual or legal issue to further development of the law…" *Id.*

### A. The Plaintiffs' Range of Possible Recovery and the seriousness of the litigation risks (*Wolinsky* factors 1 and 3).

Plaintiffs contended that they worked an average of 65 hours per workweek and should have been paid overtime for all hours over 40.  Plaintiffs did not contest that, had TIAA Bank considered the RLOs non-exempt under the FLSA, the commission structure provided by TIAA Bank qualified as a piece-rate compensation system, meaning the RLOs were paid straight time for all hours worked.  Plaintiffs sought, under the FLSA, overtime pay premiums amounting to additional pay of one-half their regular hourly rate for all hours worked over 40.  *See* 29 CFR § 778.118.   TIAA Bank disputed that Plaintiffs were non-exempt under the FLSA (and its counterpart state statutes) and that they were due any overtime.  TIAA Bank also disputed overtime averages advanced by the Plaintiffs. While TIAA Bank did not track the number of hours worked by these RLOs, it maintains that certain evidence contradicts the number of hours Plaintiffs claim to have worked, including records relating to their outside sales activities, written discovery responses and e-mail communications.

It is well-settled that where an employer does not record the number of hours worked by non-exempt employees, employees may rely on imprecise evidence, including their own recollections, to establish a reasonable approximate amount of damages.  *Anderson v. Mt Clemens*



ATTORNEYS AT LAW

*Pottery Co.*, 328 U.S. 680, 687-688 (1946*).*  Once a plaintiff meets such burden, the burden then returns to the defendant to negate the reasonableness of the plaintiff's evidence.  The factfinder would be tasked with accepting the plaintiff's estimations or providing a reduction from the plaintiff's evidence if the estimate were found to be unreliable.  *Id.; Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1047 (2016).

In the event that Plaintiffs had proceeded to trial and prevailed in demonstrating that they were non-exempt employees, and if the factfinder determined Plaintiffs worked an average of 65 hours of work per workweek, the aggregate damages of all 54 Plaintiffs would have totaled: $4,526,000.  Plaintiffs sought, in addition to such amounts if they prevailed, liquidated damages and/or prejudgment interest.  Including those amounts, Plaintiffs estimate their potential recovery to have been between $5.1 million (prejudgment interest awarded but no liquidated damages) to $9.9 million (liquidated damages and no prejudgment interest).

Nevertheless, in addition to disputing liability, TIAA Bank disputed that Plaintiffs worked an average of 65 hours per workweek; instead TIAA Bank argued that many weeks Plaintiffs did not work any hours over 40 in a workweek and that a fair average was closer to 45 hours per workweek.  While Plaintiffs fiercely dispute that defense, a finding of liability, coupled with a finding that an average workweek was 45 hours, would reduce total damages to $1.2 million, without consideration of liquidated damages or prejudgment interest.  Including such amounts, a recovery based on TIAA Bank's estimates of hours worked by Plaintiffs would range between $1.4 million and $2.6 million.



ATTORNEYS AT LAW

Thus, the instant settlement providing for a total gross settlement amount of $3.5 million to the 54 Plaintiffs is both fair and reasonable based upon the value of the claims, even prior to factoring in other risks and delays of litigation, discussed below.

**B.  The Extent to which Settlement Avoids the Hurdles of Establishing Claims and Defenses (*Wolinsky* factor 2).**

The settlement fully resolves both the litigation and arbitration, and accordingly, expressly eliminates the hurdles and risks of continued protracted litigation for both sides.

TIAA Bank argued throughout the arbitration and litigation that Plaintiffs were appropriately classified as non-exempt outside sales employees, and therefore were not entitled to any overtime or minimum wage under federal and state laws. TIAA Bank maintained during both the arbitration and the litigation that TIAA Bank RLOs' (Plaintiffs') primary duty was to make sales of mortgage loans and they were customarily and regularly engaged away from TIAA Bank's places of business, thus satisfying the requirements for them to meet the outside sales exemption. Plaintiffs disputed this claim, contending that they spent the overwhelming majority of their time working in fixed office locations, including bank locations, real estate offices and home offices, all while connected to TIAA Bank's computer network.

Neither side disputes that there are significant risks in continuing through the adversarial process. Moreover, continued litigation and arbitration, if the Parties' settlement is not approved, will result in the delay of payment to Plaintiffs, even if there was an award in their favor.

For these reasons, the instant settlement providing for a total gross settlement amount of $3.5 million to the 54 Plaintiffs meets the requirements of the second *Wolinsky* factor.

**C.  The Settlement is an arm's length agreement reached before an experienced**



ATTORNEYS AT LAW

**mediator and is not the product of fraud or collusion (*Wolinksy* factors 4 and 5).**

The fourth and fifth *Wolinksy* factors require the Court to find the settlement is an arm's length agreement reached in good faith based on the Parties' mutual understanding of the risks and benefits of continued adversarial proceedings versus settlement.  Courts find these factors are met where the parties are represented by competent counsel and use the service of a third-party mediator.  *See Hernandez v. Anjost Corp.*, No. 11-CV-1531 (AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'" (quoting *Johnson v. Brennan*, 10-CV-4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011)); *Vasquez v. TGD Group, Inc.*, 14-CV-7862 (RA), 2016 WL 3181150, at *3 (S.D.N.Y. June 3, 2016).

In the instant matter, the Parties attended two (2) full days of mediation before Marlene Quintana, Esq. who is both a Florida Bar Board Certified Specialist in Labor & Employment Law and a well-respected mediator.  The mediation was conducted only after significant written discovery had been completed, including the exchange of thousands of pay records for all Plaintiffs, as well as TIAA Bank's policy and pay documents, allowing the Parties to fully evaluate the merits of the case and the defenses prior to settlement.

Ultimately, the Parties did not reach an agreement during either mediation.  Rather, the Parties, with the assistance of the mediator, reached an agreement regarding the amount of the settlement several hours following the conclusion of the second mediation on April 1, 2020. Thereafter, negotiations continued regarding other aspects and terms of the settlement, including



ATTORNEYS AT LAW

the finalization of the settlement agreement itself, which involved numerous lengthy phone conferences and emails.

Thus, the final two *Wolinsky* factors also weigh in favor of approving the settlement.

**D. The *Wolinksy* public policy considerations support approval.**

*Wolinksky* further held that a court should consider certain public policy factors when determining if a settlement under the FLSA should be approved. *Wolinsky*, 900 F.Supp.2d at 336. There, the court held that the following factors may weigh against approval: "(1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id.*

Though such language exists in *Wolinksy* and is occasionally cited by this Court in a settlement approval opinion, Plaintiffs could not locate a single case where any such factor resulted in a denial of settlement approval or was seriously considered. Though *Fisher v. S.D. Protection, Inc. supra,* decided by the Second Circuit this year, did not overrule such considerations, it is of note that *Fisher* omitted the additional public policy factors when listing the factors to be considered in an FLSA settlement. *See* 948 F.3d at 600. In numerous cases, these additional factors are not cited by the court in its consideration of the fairness and reasonableness of the settlement. *See, e.g. Lopez v. Poko-St. Ann L.P.,* 176 F. Supp. 3d 340, 345 (S.D.N.Y. 2016) (Moses, J.).



ATTORNEYS AT LAW

Provided these four (4) factors remain relevant, each directs approval of the settlement. TIAA Bank no longer operates its retail outside mortgage sales division, and accordingly there is no risk that the circumstances at issue here will recur.   While Plaintiffs aver there are other employees who were similarly situated to them, the settlement here is publicly filed and contains no confidentiality provisions or restrictions regarding any of the Plaintiffs' rights in advising other former employees of their claims; only the 54 individuals who are actually being paid in this settlement are waiving any claims.    Under such circumstances, the policy considerations of the FLSA are not thwarted by the instant settlement, which resolves the claims of the 54 individuals before this Court and the Arbitrator. *See Cheeks*, 796 F.3d at 203 (finding a settlement agreement which restricted the plaintiffs' attorney from filing future cases against employer was properly rejected because the provision was specifically designed to avoid other employees bringing claims).

Importantly here, Plaintiffs' counsel is under no bar from bringing future actions should any former TIAA Bank employees seek their counsel.  Similarly, the 54 Plaintiffs are not barred from speaking to their colleagues (or anyone else) about the litigation and their settlement payment.  Unlike other settlements which have been denied approval on policy grounds, the settlement release here is limited to wage and hour claims and does not extend to other non-related employment claims.

In short, approving a settlement providing an average payment of over $40,000 to each of the 54 individuals before this Court and Arbitration, a significant payment for FLSA cases in general and in this case where liability and damages were significantly disputed, fulfills, and in no



ATTORNEYS AT LAW

way thwarts, any Congressional purpose of the FLSA.  Accordingly, for these reasons as well, the settlement should be approved.

## II.    <u>Settlement Allocation</u>

The proposed settlement agreement provides that each of the 54 Plaintiffs will receive a payment of $10,000 plus a prorated amount based upon their amount of compensation received and their length of employment with TIAA Bank.  These distributions correlate with Plaintiffs' proposed damages models, and result in payments averaging just over $42,000 per plaintiff. Employees who worked the longest amount of time and were paid the most (and thus had a higher regular rate of pay, upon which the overtime pay are based) receive more, with the highest settlement award totaling $143,460.  Section 1(E) of the settlement agreement, executed by each Plaintiff and TIAA Bank, provides the precise calculations under this formula and further demonstrates the reasonableness of the settlement.

## III.    <u>Plaintiffs' Hours and Wages Paid</u>

TIAA Bank produced pay records for each of the 54 Plaintiffs for each pay period within their respective statute of limitations (based upon state law and the date each opted in to the FLSA collective). Those records provide the amount each Plaintiff earned in wages, and there was no dispute regarding the factual information provided in those records.

As to the number of hours worked, as stated above, there are no records specifically providing such information.  Utilizing Plaintiffs' estimates of 65 hours work per workweek, Plaintiffs calculated overtime by dividing their weekly compensation by 65 hours to arrive at the regular rate, and then multiplying half of that regular rate for 25 hours per workweek (the amount



ATTORNEYS AT LAW

of overtime worked as contended by Plaintiffs). Attached as Ex. 1-B is the table showing these calculations.

As provided above, though TIAA Bank did not disagree with the general methodology utilized by Plaintiffs (*i.e.* arriving at regular rate by dividing total wages by hours claimed to have been worked, then calculating overtime by multiplying half the regular rate by the number of overtime hours claimed to have been worked), TIAA Bank disputed that Plaintiffs regularly worked overtime, and contended 5 hours of overtime per workweek was a more realistic estimate of possible damages. Thus, TIAA Bank multiplied the overtime rate by 5 hours per workweek. Damages under TIAA's estimates are also included in the table attached as Ex. 1-B.

## IV.    <u>Attorneys' Fees and Costs</u>

The settlement agreement provides that Plaintiffs' counsel shall receive one-third (1/3) of the settlement as payment for their services, which is the traditional fee awarded by this Court in contingent wage and hour cases. *Sanchez v. DPC New York Inc.*, 381 F. Supp. 3d 245, 250 (S.D.N.Y. 2019) ("Traditionally, in FLSA settlement cases, attorneys' fees are awarded under the "percentage of the fund" method and one-third of the total settlement is normally considered a reasonable fee.") *Zhong v. Rockledge Bus Tour Inc.*, 18-CV-00454 (RA), 2018 WL 3733951 at *4 (S.D.N.Y. Aug. 6, 2018) ("one-third of the net settlement amount ... is an amount routinely approved under the percentage method"); *Coleman v. DeFranco Pharmacy, Inc.*, No. 17-CV-08340 (HBP), 2018 WL 3650017 at *3 (S.D.N.Y. Aug. 1, 2018) ("[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Chowdhury v. Brioni Am., Inc.*, 16 CIV. 344 (HBP), 2017 WL 5953171, at *6 (S.D.N.Y. Nov. 29, 2017) ("[c]ontingency fees of one-third



ATTORNEYS AT LAW

in FLSA cases are routinely approved in this Circuit"); *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases."); *Tiro v. Public House Investments, LLC,* No. 11 Civ. 7679, 2013 WL 4830949, at * 12, 16 (S.D.N.Y. Sept. 10, 2013) (awarding fees of 33 1/3% of $1,300,000 fund in FLSA and NYLL case); *Beckham v. KeyBank N.A.,* No. 12 Civ. 7836, 2013 WL 1803736, at *8, 15 (S.D.N.Y. April, 29, 2013) (awarding fees of 33 1/3% of $4,900,000 fund as fees in FLSA and multi-state wage and hour case); *Aponte v. Comprehensive Health M'ment, Inc.,* No. 10 Civ. 4825, 2013 WL 1364147, at *6–7 (S.D.N.Y. April 2, 2013) (awarding fees of 33 1/3% of $6,500,000 fund in FLSA and NYLL case); *Guaman v. Ajna–Bar NYC,* No. 12 Civ. 2987, 2013 WL 445896, at *7,9 (S.D.N.Y. Feb. 5, 2013) (awarding fees of 33 1/3% of the fund in FLSA and NYLL case); *Capsolas v. Pasta Resources, Inc.,* 10–cv–5595, 2012 WL 4760910, at *8, 10 (S.D.N.Y. Oct. 5, 2012) (awarding fees of 33 1/3% of $5,250,000 fund in FLSA and NYLL case); *Diaz v. Eastern Locating Serv. Inc.,* No. 10–cv–04082, 2010 WL 5507912, at *7 (S.D.N.Y. Nov. 29, 2010) (awarding fees of 33 1/3% of fund in FLSA and NYLL case). Additionally, as this Court has noted, "where the parties were able to settle relatively early and before any depositions occurred, the Court finds that the percentage method, which avoids the lodestar method's potential to create a disincentive to early settlement, is appropriate." *Hyun v. Ippudo USA Holdings*, 14-CV-8706 (Nathan, J.), 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016).

Where a settlement of an FLSA matter contains a provision providing for attorney's fees and costs, the Southern District's previous approach, though now rejected, was to apply the



standards utilized in considering a motion for attorneys' fees in a fee-shifting case and reduce fees found unwarranted or excessive. *See, e.g. Pla v. Renaissance Equity Holdings LLC*, 2014 WL 113721 (S.D.N.Y. Jan. 13, 2014) (reducing attorney's fees which were provided in a settlement agreement).

In February of this year, the Second Circuit clarified the trial court's role when evaluating attorneys' fees in a proposed settlement of FLSA claims. *Fisher v. SD Protec. Inc.*, 948 F.3d 593, 602 (2d Cir. 2020). *Fisher* held a district court's role in considering the reasonableness of any requested attorneys' fees in FLSA settlements is to ensure that the settlement is fair and reasonable to the employees seeking to resolve their dispute. However, a court may not rewrite the settlement terms and reduce requested fees, which is a term in the settlement. ("[T]he district court abused its discretion in rewriting the parties' settlement agreement, and it erred in evaluating the fees portion of the settlement agreement as a separate fee application rather than as part of a complete settlement agreement." *Fisher*, at 602). Rather, the court should review the proposed fees not under the lens of a fee application, but instead under the lens of determining whether the settlement is fair and reasonable. *Id.* at 606 ("Where the issue of fees and costs is presented in the context of a complete settlement agreement that includes an agreement with respect to fees and costs, however, the inquiry is different as the settlement is submitted for approval, not adjustment or revision. Accordingly, the district court erred here by evaluating the settlement under the lens of a fee application.").

Since *Fisher*, this Court has noted its review of the reasonableness of a settlement and the included attorneys' fees term is not intended to be a lodestar analysis which mirrors a disputed fee



ATTORNEYS AT LAW

request motion where fees are requested pursuant to statutory authority rather than a private contract. *Camacho v. Midtown Ctr. Auto Repair Inc.*, 19-CV-9505 (LJL), 2020 WL 1082466, at *1 (S.D.N.Y. Mar. 5, 2020) ("The Court has evaluated the request applying the factors that the Court understands to be relevant under *Fisher*... In particular, the Court has examined the degree of success, the projects undertaken by counsel, the time spent on each of those projects and the reasonableness of the time spent on those projects given the nature of the case, and the factors laid out in *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000). The Court also has considered the agreement between the parties and the range of recoveries typically approved by courts in this District."). Thus, in *Camacho*, the Court approved a settlement which contained a provision that 1/3 of the settlement would be paid as attorneys' fees <u>without</u> performing a precise lodestar calculation nor determining what hourly fee the Court would have approved in the context of a fee application. Similarly, in *Martinez v. Aguilar v. VBFS, Inc.*, 19-CV-621 (JLC), 2020 WL 1036071, at *1 (S.D.N.Y. Mar. 3, 2020), this Court followed *Fisher* by considering the attorneys' fees provision in the settlement agreement as a term to be considered when evaluating the overall fairness of the settlement pursuant to the *Wolinksy* factors. The Court found the attorneys' fees request did not change its evaluation of the overall fairness of the settlement "under the totality of the circumstances," while explicitly stating its approval "should not be construed or cited as an approval of the hourly rate of plaintiffs' counsel." The Court did not further evaluate the fee provision, nor provide alternative hourly rates.

Though Plaintiffs do not seek an hourly fee, understanding the Court wishes for such records to review the fairness of the settlement, attached to each of the declarations from Plaintiffs'



attorneys are their firm's respective timesheets.  As provided in each of the Plaintiffs' attorney's declarations, each has significant experience litigating wage and hour disputes.

Plaintiffs' Counsel has substantial experience in litigating class and collective wage and hour cases. As discussed in the accompanying declarations, Justin Swidler has litigated more than 100 putative federal wage and hour class actions in the last 10 years, and is currently certified class or collective counsel in eleven wage and hour class actions throughout the United States, collectively representing more than 60,000 workers. (Decl. of Justin Swidler). Swartz Swidler has been previously recognized by other courts in the Third Circuit, and courts in other circuits as being particularly skilled in this area of the law. *See, e.g. McGee v. Anne's Choice, Inc.,* 2014 U.S. Dist. LEXIS 75840 (E.D. Pa., June 4, 2014) (Schiller, J.) (finding Mr. Swartz and Mr. Swidler to be "well-versed in FLSA cases and skilled in litigating and settling wage-and-hour litigation"); *Keller v. T.D. Bank, N.A*., 2014 U.S. Dist. LEXIS 155889, *14 (E.D. Pa. 2014) (Restrepo, J.) (finding that Mr. Swartz and Mr. Swidler "have considerable experience handling class and collective action disputes" and noting that they "represented the Named Plaintiffs and the prospective class competently, diligently, and with professionalism throughout the course of this litigation."); *Stonebrack v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. June 19, 2013) (Gardner, J.) (finding that Mr. Swidler and Mr. Swartz have "handled numerous class action lawsuits" and that their firm "is qualified to represent the class as class counsel"); *Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235, *19-20 (D. Utah 2015) (finding that Mr. Swartz and Mr. Swidler "litigated [the FLSA collective action] for more than two years with competence,



diligence, and professionalism . . . [and finding] that [Swartz Swidler, LLC] has significant experience in litigating wage and hour cases").

Mr. Soloff is a Board-Certified Labor & Employment attorney in Florida and has been practicing law since being admitted to the Florida bar in 1985. Mr. Soloff has significant experience representing public entities and cities throughout Florida. Mr. Soloff also has experience representing plaintiffs in collective action and class action lawsuits. Since 1985, Mr. Soloff has been actively engaged in the litigation of Fair Labor Standards Act claims in U.S. District Courts in Florida. Since 2013, his practice has emphasized the representation of plaintiffs in class and collective actions involving wage and hour claims including many large, nationwide employment class and collective action wage and hour disputes, (Decl. of Robert Soloff). (Decl. of Robert Soloff).

Mr. Silverman is a partner of Frank Weinberg Black, P.L. ("FWB"). An extensive portion of FWB's business involves complex litigation and its litigation attorneys are experienced trial lawyers with considerable experience in litigating wage and hour actions (representing both Plaintiffs and Defendants), most of which are litigated in the Federal Courts located within the State of Florida. Mr. Silverman has nearly twenty-three years of complex civil litigation experience with particular emphasis in wage and hour individual, collective and class actions on behalf of both employers and employees in FLSA and other wage cases. Mr. Silverman has served as lead counsel or co-lead counsel in over 70 FLSA court cases and arbitrations, as well as co-lead defense counsel in four (4) related nationwide Rule 23, Fed.R.Civ.P class actions now pending in the United States District Court for the Southern District of Florida. (Decl. of Silverman).



ATTORNEYS AT LAW

Carly Skarbnik Meredith, Esq. is a founding Member of Meredith Malatino Law LLC. Ms. Meredith has been practicing for 11 years and has focused her career exclusively in the field of employment law. She has a plethora of experience representing both employees and employers with their employment issues, needs, and concerns.  Ms. Meredith actively litigates in federal and state courts. She represents clients on a variety of employment related issues including wrongful termination, wage and hour, contractual matters, non-competes, discrimination, retaliation, and whistleblowing. During her career, Ms. Meredith has helped clients obtain seven figure settlements. In 2016, Ms. Meredith co-chaired a six-week trial that resulted in a jury verdict of $935,000.  Ms. Meredith has clerked for the Hon. Rachelle L. Harz, J.S.C. and interned for the Hon. Dennis M. Cavanugh, U.S.D.J.

Plaintiffs' counsel has incurred $10,682.62 in recoverable costs.  The settlement provides that Plaintiffs' counsel shall be entitled to recover $10,517 in costs.  These costs are outlined in the attached declaration of Justin Swidler at paragraph 9, and consist of mediation fees, filing fees, and similar recoverable costs under the appropriate statutes.  Accordingly, the settlement providing for partial reimbursement should be approved.

V.    **Service Payments**

Plaintiffs' counsel request that the four (4) Named Plaintiffs, Richard Martin, Lori Lesser, Leidiana Llerena and David Gutfeld be provided Service Payments of Two Thousand Five Hundred Dollars ($2,500.00) each in recognition their services to the advancement and settlement of this case on behalf of the other fifty-one (51) Plaintiffs who opted in to this case.



The Named Plaintiffs' services began with bringing the case and initiating the filing of the federal and State law claims and class claims which were resolved through the Settlement Agreement and, upon Court approval, will allow for their fellow RLOs who opted into the Lawsuit to recover significant amounts of alleged unpaid wages.

The Named Plaintiffs assisted with the preparation of the complaint and amended complaint, produced documents in support of their claims, assumed the burden and risk associated with assisting with litigation, assisted Plaintiffs' Counsel in preparation for both mediations, provided information regarding TIAA Bank's RLO pay pr

actices and throughout the case assisted Plaintiffs' counsel, answering all questions raised. The Named Plaintiffs served the other 51 Plaintiffs by providing detailed factual information regarding their job duties and hours worked, and the pay policies and practices of retail loan officers employed by TIAA. The Named Plaintiffs performed integral services to the other 51 Plaintiffs in contacting Plaintiffs' Counsel and initiating this action, assisting in preparation for both mediations; all made significant and extensive contributions to the prosecution of the litigation and are deserving of service awards of Two Thousand Five Hundred Dollars  for such service to all Plaintiffs.

**VI.    Limited Release/No Non-Disparagement**

The settlement agreement contains a limited non-disparagement provision which is narrowly tailored and ensures that the provision will not act in contradiction to the policies undermining the FLSA.  Specifically, the Agreement provides:



> The Plaintiffs agree that they will not disparage either verbally or in writing the character, quality, or propriety of the person, personnel, or business operations of TIAA Bank. Nothing herein shall preclude the Plaintiffs from making truthful references either verbally or in writing to the character, quality, or propriety of the person, personnel, or business operations of TIAA Bank, or shall preclude the Plaintiffs from making truthful statements about their experience in litigating this action.

Settlement Agreement, § 6, Ex. 1-A.

Though this Court has advised that general non-disparagement clauses will not be permitted in FLSA settlement agreements, "not every non-disparagement clause in an FLSA settlement is *per se* objectionable." *Cionca v. Interactive Realty, LLC*, 15-CV-05123 (Moses, J.), 2016 WL 3440554, at *3 (S.D.N.Y. June 10, 2016). Rather, "a clause which bars a plaintiff from making negative statements about a defendant must include a carve-out for truthful statements about a plaintiff's experience in litigating his case." *Id.,* quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015).

Here, the non-disparagement clause specifically excludes any truthful statements, including truthful statements about Plaintiffs' experiences in litigating their case. Under the proposed settlement, Plaintiffs are permitted to disclose the litigation, discuss the litigation, the hours they worked, their pay, their lack of overtime compensation, the amount they were paid in the settlement, and the "character, quality, or propriety of the person, personnel, or business operations of TIAA Bank," provided the statements they make are true. As written, no truthful statement could violate the non-disparagement clause. Accordingly, because prohibiting Plaintiffs from making statements that are both untruthful and disparaging does not thwart the purposes of

# SWARTZ SWIDLER, LLC

ATTORNEYS AT LAW

the FLSA, the non-disparagement clause is permissible and does not affect the fairness of the settlement.

Nevertheless, unlike the other provisions of the settlement agreement, the proposed settlement explicitly permits the Court to sever the non-disparagement provision from the remainder of the settlement while ordering approval of the settlement. *See* Settlement Agreement at § 6 ("If the Non-Disparagement provision contained in Paragraph 6 is held to be invalid, illegal, or incapable of being enforced, such term shall be deemed null and void and all other terms of the Agreement shall remain in full force and effect."). Thus, should the Court determine that this specific provision is invalid and cannot be enforced, the Parties have explicitly agreed the Court may approve the settlement while refusing to enforce this specific provision.

For the aforementioned reasons, the Parties respectfully request the Court and the Arbitrator to enter an Order approving the proposed Settlement.

The Parties thank the Court and the Arbitrator for its consideration of this request.

Respectfully submitted,

**SWARTZ SWIDLER, LLC**

*/s/ Justin L. Swidler          .*
Justin L. Swidler, Esq.

cc: counsel of record (via ECF), Andrew Byrne (via email)