USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/20/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORI LESSER, et al.,

        Plaintiffs,

    -against-

TIAA BANK, FSB,

        Defendant.

19-CV-1707 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

Now before the Court is the parties' joint letter-motion dated August 4, 2020 ("Joint Letter") (Dkt. No. 59), seeking approval, both by this Court and by the arbitrator in a parallel arbitration proceeding (the "Arbitration"), of their proposed FLSA Settlement and Release Agreement ("Agreement") (Dkt. No. 59-2), pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), which held that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require approval of the district court or the [Department of Labor] to take effect." *Id.* at 206. The Agreement requires defendant TIAA Bank, FSB f/k/a EverBank Financial Corp. ("TIAA") to pay a total of $3.5 million to settle the "misclassification" claims asserted under the Fair Labor Standards Act ("FLSA") and state law by the 54 plaintiffs and claimants who signed the Agreement (collectively the "signatories").[1] For the reasons that follow,

---

[1] Forty-nine of the signatories brought and pursued their misclassification claims solely in this Court. The remaining five – Robert S. True, Guillermo A. Cacho, Benjamin W. Mitas, Omar M. Hassan, and Joseph M. Kufner – were parties to arbitration agreements with TIAA and first filed their claims before the American Arbitration Association ("AAA"). True, Cacho, and Mitas brought their arbitration claims under the FLSA; Hassan and Kufner brought their arbitration claims under the New York Labor Law ("NYLL"). Hassan's arbitration claims were limited to those arising before December 1, 2016. *See* Order on Motion to Approve Settlement ("Arbitration Order") (Dkt. No. 60-1) at 1-2. On February 25, 2019, Hassan opted in to this action with respect to his FLSA claims. (Dkt. No. 22-1, at ECF page 10.) On May 29 and June 1, 2020 (at the same time they signed the Agreement), True, Cacho, Mitas, and Kufner opted in to this action (Dkt. No. 53-1, at ECF pages 2-5) "to be within this Court's jurisdiction and to effectuate this Agreement."

the Agreement will be approved as fair and reasonable, insofar as it pertains to the claims before this Court, and those claims will be dismissed with prejudice.

## Background

This case arises out of TIAA's compensation of its retail, non-office mortgage loan officer employees ("RLOs") using a commission-based structured pursuant to which they were not paid for any overtime hours because they were classified as outside sales employees, exempt from FLSA and similar state law wage and hour statutes. Joint Ltr. at 1. The parties' central dispute was whether the RLOs' job duties rendered them exempt from the requirements of FLSA. *Id*. at 2. They also disagreed as the hours that the RLOs actually worked. Because it classified these employees as exempt, TIAA did not record their time. In this action, plaintiffs alleged that they worked an average of 65 hours per workweek, but TIAA claimed that "a fair average was closer to 45 hours per workweek." *Id*. at 1-2, 6. The parties negotiated the Agreement after significant discovery, two full-day mediations, and continued negotiations following those mediations. *Id*. at 8-9.

## Agreement

Under the Agreement, TIAA will pay a total of $3,500,000 to the 54 signatories. The four named plaintiffs in this Court – Lori Lesser, David Gutfeld, Leidiana Llerena, and Richard Martin – will each receive a $2,500 service award, and plaintiffs' counsel (who also represented the claimants before the AAA) will receive $1,166,666 in attorneys' fees, plus $10,517 to reimburse their litigation expenses, which will leave $2,312,817 to be distributed among the 54 signatories

---

Ag. at 5. On August 11, 2020, the AAA arbitrator found the Agreement to be "fair and reasonable," and approved it "within the meaning of the FLSA." Arb. Order at 12. The Court notes that FLSA claims are deemed arbitrable, in this Circuit, in part because "the kind of third-party supervision that arbitration affords was deemed to be sufficiently similar to court (or Department of Labor) approval to be held valid under the FLSA." *Mei Xing Yu v. Hasaki Restaurant, Inc.*, 944 F.3d 395, 420 n.7 (2d Cir. 2019).

in amounts ranging from a low of $11,503.34 to a high of $143,460.51. *See* Ag. at 8-10; Joint Ltr. at 2-3. Each signatory will receive a base payment of $10,000, plus a prorated amount based on the length of his or her employment (within the applicable statute of limitations) and rate of pay, resulting in an average payment of just over $42,000. *Id*. at 3. Payment will be made within 30 days of the Court's entry of an order approving the Agreement. Ag. at 10.

Plaintiffs estimate their recoverable damages, based on average hours worked, as $4,526,000, and estimate their potential maximum recovery, including liquidated damages and interest, as between $5.1 million and $9.9 million. Joint Ltr. at 6. TIAA disputes liability, claiming that the employees were properly classified as exempt, and also argues that the RLOs worked significantly fewer hours than they contend. If TIAA were found liable for misclassification, but prevailed as to the hours it contends the RLOs actually worked, the signatories' recovery would range between $1.4 million and $2.6 million. *Id*.

The Agreement includes a release by the signatories as to "all claims that could arise out of the same factual predicate as the claims raised in the Lawsuit and Arbitration . . . under the FLSA, the NYLL, the NJWL [New Jersey Wage Law], and Wage Theft Protection Act" and other labor law statutes. Ag. at 12 (citation omitted). The Agreement includes a non-disparagement clause in which plaintiffs "agree that they will not disparage either verbally or in writing the character, quality, or propriety of the person, personnel, or business operations of TIAA Bank." *Id*. at 15. However, that clause goes on to state that "[n]othing herein shall preclude the Plaintiffs from making truthful references either verbally or in writing to the character, quality, or propriety of the person, personnel, or business operations of TIAA Bank, or shall preclude the Plaintiffs from making truthful statements about their experience in litigating this action." *Id*. at 15. The non-

disparagement clause is severable, should the Court deem it invalid. *Id*. at 15-16. The Agreement states that the venue for any dispute relating to it shall lie in this Court. Ag. at 17.

## Analysis

The Court has reviewed the terms of the Agreement and finds that they are fair and reasonable as required by *Cheeks*, 796 F.3d at 199. The overall settlement amount (net of attorneys' fees) is roughly 25% of the signatories' maximum possible recovery (with liquidated damages), but is roughly equal to their likely recovery if they were to prevail on the misclassification issue but TIAA were to prevail as to the number of hours they worked. Further, the settlement avoids the risks and burdens of litigation, including the risk that no class would be certified (class certification motion practice had not been initiated prior to the agreed settlement) and the risk that TIAA would be found to have correctly classified the RLOs as exempt, as well as the costs, uncertainties, and delays inherent in litigation of this nature. Accordingly, the overall settlement amount is fair and reasonable. *See Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (finding net settlement of 25% of FLSA plaintiff's maximum recovery to be reasonable where, among other contested issues, the parties disputed the hours worked by the plaintiff); *accord Fraticelli v. MSG Holdings, L.P.*, 2018 WL 5004867, at *2 (S.D.N.Y. Oct. 16, 2018) (collecting cases).

The proposed fee award is also reasonable. The signatories' attorneys will receive $10,517.00 to reimburse them for out of-pocket costs incurred in connection with this action, and $1,166,666.00 (one third of the net settlement amount) in attorneys' fees. Ag. at 10. That sum is within the range historically approved in this District, s*ee Martinez v. SJG Foods LLC*, 2017 WL 4676828, at *2 (S.D.N.Y. Oct. 16, 2017) (quoting *Meza v. 317 Amsterdam Corp.*, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015)) ("When using a percentage of the fund approach,

'courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.'"), and, more importantly, is fair in light of the "degree of success obtained." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).[2]

The proposed fee award appears to be significantly higher than counsel's lodestar. Attorney Justin Swindler performed 402.7 hours of work on behalf of plaintiffs and claimants, both before this Court and in the Arbitration. (Dkt. No. 59-4.). Attorney Robert D. Soloff performed 477.4 hours of work (Dkt. No. 59-5 ¶ 20, Dkt. No. 59-7); the firm of Frank, Weinberg & Black, PL performed 546.9 hours of work (Dkt. No. 59-8 ¶ 12 & ECF pages 10-84); and attorney Carly Meredith performed 21.4 hours of work. (Dkt. No. 59-10.) Counsel did not disclose their hourly rates (and thus did not present any lodestar figure to the Court). The Court notes, however, that the fee award requested, $1,166,666, divided by the total number of hours worked, 1,448.4, implies an average hourly rate of $805.50, which is significantly higher than any average or blended rate the Court would expect to see – or find reasonable – in performing a lodestar analysis.[3] If the Court

---

[2] In *Fisher*, the Second Circuit held that there is no "proportionality limit on recoverable attorneys' fees" in an FLSA case, and thus that the courts cannot place an automatic cap on such fees at 33%. 948 F.3d 593 at 602-05. In this case, however, the signatories have affirmatively requested a fee award equivalent to one third of the net settlement consideration, which presents no comparable difficulties.

[3] "Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases." *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) (*quoting Yuquilema v. Manhattan's Hero Corp.*, 2014 WL 4207106, at *14 (S.D.N.Y. Aug. 20, 2014)). Reasonable rates in such cases for experienced associates "fall in the $250-300 range. *Id*. (collecting cases). Although there has been some upward pressure on attorneys' fees in recent years, the "prevalent rates" in this District remain considerably below $805 per hour for FLSA litigation. *Brown v. City of New York*, 2020 WL 6075524, at *4 (S.D.N.Y. Oct. 15, 2020) (concluding that rates ranging from $250 to $550 per hour depending on experience were reasonable in FLSA action and collecting cases).

were to use a hypothetical blended rate of $300 per hour, the requested fee award would represent a lodestar multiplier of 2.685. At $400 per hour, the multiplier would be 2.013.[4]

Where, as here, counsel have negotiated a fair settlement for a large group of plaintiffs and claimants, there is nothing unreasonable about a lodestar multiplier in this range. "The fact that counsel here worked on contingency clearly entitles them to some premium for the risk incurred," *Fujiwara*, 58 F. Supp. 3d at 438-39. Thus, when analyzing the fairness of a fee award under *Cheeks*, "courts in this district will often approve lodestar multipliers between two and four times." *Souffrant v. 14-15 Mertens Place Corp.*, 2020 WL 1166231, at *2 (S.D.N.Y. Mar. 11, 2020) (quoting *Montalvo v. Flywheel Sports, Inc.*, 2018 WL 7825362, at *6 (S.D.N.Y. July 27, 2018)); *see also Pinguil v. We are all Frank, Inc.*, 2018 WL 2538218, at *5 (S.D.N.Y. May 21, 2018) (collecting cases). Accordingly, counsel's requested fees remain within a reasonable range when analyzed in comparison to their implied lodestar.

Having considered the relevant factors, including the "degree of success obtained" – which the Court finds to be significant in light of the litigation risks summarized above and the costs and uncertainties that have been avoided – and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement,'" *Pinzon v. Jony Food Corp.*, 2018 WL 2371737, at *3 (quoting *Hyun v. Ippudo USA Holdings et al.*, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016)), the Court concludes that counsel's proposed fee award is fair and reasonable.

---

[4] In *Fujiwara*, which was a class and collective action on behalf of sushi chefs and wait staff, counsel negotiated a settlement in the total amount of $2.4 million. The court ultimately approved a fee award of 20% of that amount, which was 1.75 times counsel's asserted lodestar (calculated using their stated hourly rates, which the court found to be unrealistically high) and 2.28 times counsel's modified lodestar (calculated by the court using what it considered to be more reasonable hourly rates). *Id*. at 439.

As noted above, the Agreement provides for a service award of $2,500 each to the four named plaintiffs for assisting in the preparation of complaint and amended complaint, providing information regarding TIAA's RLO pay practices, assisting counsel in preparing for two mediations, and assuming the additional burden and risk associated with these tasks and with serving as named plaintiffs. Joint Ltr. at 19. "Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting with the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.'" *Hall v. ProSource Technologies, LLC*, 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016) (quoting *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014)). In this case, the aggregate of the four service awards requested amounts to less than 0.3% of the total settlement amount, and is fair and reasonable. *See Hall*, 2016 WL 1555128, at *2, 9 (approving service awards of $3,500 each for twelve named plaintiffs, for a total of $42,000 out of a total settlement amount of $1,125,000.00).

Finally, while the non-disparagement clause in this case could be construed as "undermin[ing] the broad remedial purposes of the FLSA." *Felix*, 2017 WL 3791149, at *2, "not *every* non-disparagement clause in an FLSA settlement is *per se* objectionable." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015) (emphasis in the original). Where, as here, a non-disparagement clause generally prohibits FLSA plaintiffs from making negative statements about an FLSA defendant, the clause "must include a carve-out for truthful statements about plaintiffs' experience in litigating their case." *Id*. Here, the non-disparagement clause contains just such a carve-out, allowing the signatories to make truthful statements, both about TIAA generally and about their experience in litigating this action. Ag. at 15. Accordingly, the

7

Court finds that the non-disparagement clause, along with the other terms of the Agreement, is fair and reasonable.

## Conclusion

Having reviewed the terms of the Agreement, including the award of fees and costs to the signatories' counsel, the Court finds that they are fair and reasonable as required by *Cheeks*, 796 F.3d at 199. Accordingly, the proposed settlement, as it relates to claims pending in this Court, is **APPROVED**.

It is hereby **ORDERED** that this action is **DISMISSED** with prejudice and without costs.

The Clerk of Court is respectfully directed to close the case.

Dated: New York, New York
October 20, 2020                          **SO ORDERED**.

                                                                         _____
                                                                         **BARBARA MOSES**
                                                                         **United States Magistrate Judge**